No. 3797

Second Circuit

## SWAIN v. LOUISIANA LIGHT & POWER COMPANY

(June 2, 1930. Opinion and Decree.)

M. C. Redmond, of Monroe, attorney for plaintiff, appellee.

Theus, Grisham, Davis & Leigh, of Monroe, attorneys for defendant, appellant.

DREW, J. This is a suit for damages occasioned by the cutting off, by two of defendant's employees, of plaintiff's electric current, both at his house and at his restaurant, on August 23, 1929.

Defendant is a public service corporation, supplying electricity to the residents of the city of West Monroe, La., and at the time plaintiff's lights were cut off he was living in that city and also operating a small restaurant on the main street of West Monroe, and was a subscriber to the electric current furnished by defendant.

The bills sent out by defendant have printed on their face the following stipulation:

"This bill is due on the 1st and delinquent after the 10th. If not paid by the 15th, the company reserves the right to discontinue service without notice."

The plaintiff was rather slow about paying his light bill, and on one occasion prior to this the lights in his house had been cut off for failure to pay by the fifteenth of the month.

On August 15, 1929, about 5:30 in the afternoon, plaintiff went to the office of defendant, and, the bookkeeper being gone

for the day and the books all locked up, he paid his light bill to the manager, who was the only person in the office at the time. He paid by check, which was duly cashed, and through error the plaintiff was not given proper credit. On the 17th of August, in making up a list of delinquents, the plaintiff was found by the books of the defendant to be delinquent, and instructions were given to two employees to disconnect the lights in plaintiff's house and restaurant. At about 9 o'clock in the morning defendant's employees went to plaintiff's home and notified his wife that they had come to disconnect the lights for failure to pay. She offered to pay, which offer was refused by the employees, they stating to her that she would have to pay at the office. The lights at the residence were cut off at about that time, and at about 11 o'clock the same employees went to the restaurant to cut off the lights there. The plaintiff was not in, and his employee, being his father-in-law, persuaded defendant's employees to wait until 1 o'clock, at which time plaintiff was expected to be back, and informed them that, if plaintiff was not back at that time, he would pay the bill. About 1:30 the same employees returned to the restaurant, at which time the plaintiff had arrived. They asked plaintiff's employee in the presence of plaintiff what he was going to do about the light bill, and he replied that he was not going to do anything. Just prior to the arrival of defendant's employees, the plaintiff, in discussing the matter with his employee, had told him that he had paid the bill.

The defendant's employees proceeded to cut off the lights in the presence of plaintiff, and plaintiff did not object, nor did he tell them that he had paid the bill. He said nothing to the men cutting off the lights.

About two hours later, plaintiff went to the office of the defendant and demanded that his lights be connected within thirty minutes. Within that length of time the manager of defendant went to the restaurant where plaintiff exhibited a canceled check showing that he had paid his bill. The manager apologized to him for the mistake, and at ten minutes to 4 the lights were again connected at the restaurant. A very short time afterwards the lights were again connected at the residence.

Plaintiff brought this suit for $850 damages for loss of business, discomfort, embarrassment, and chagrin, for the lights having been cut off. The lower court awarded him damages in the sum of $50. From that judgment defendant has appealed, and the plaintiff has answered the appeal, praying that the judgment be increased to the amount sued for.

Defendant has filed in this court a plea of estoppel, based on the fact brought out on the trial in the lower court that, as above set forth, plaintiff was present at the time the lights were cut off and knew full well at that time that the bill had been paid, and that defendant's employees were making a mistake in cutting off the lights, and that he did not so advise defendant's employees, and did not in any way, by word or action, protest against the cutting off of his lights, but, on the contrary, tacitly acquiesced in and consented to such action on the part of defendant; that plaintiff was under a legal duty to inform defendant's employees that the bill had been paid, and, if necessary, to exhibit the canceled check to them, before the lights were cut off, in order to give the employees a chance to rectify the mistake; and that this silence on the part of plaintiff when under a duty to speak was a concealment of facts material, unknown to defendant's employees, and, in effect, a

misrepresentation to them, upon which they had a right to rely, and so relying thereon changed their own and defendant's position for the worse.

The plea of estoppel, in so far as it relates to plaintiff's claim for damages for disconnecting the lights at the restaurant, it well founded.

It is a matter of common knowledge that mistakes will occur in any business where there are a number of customers to deal with, and, while it is true that any one injured and damaged through the mistake of another is entitled to recover the amount of the actual damage caused him, it is likewise true that one cannot stand by silently and allow himself to be damaged when by his acts or words he could have prevented the damage. It is not only the duty of one to minimize any damage caused him, but it is as well his duty to prevent the injury if he can reasonably do so. When plaintiff stood by silently and allowed his lights to be cut off and raised no protest he by his silence acquiesced and consented for them to be cut off. It cannot be presumed that, if he had told defendant's employees that his bill was paid or had exhibited to them his canceled check, they would have disconnected his lights; for as soon as he notified defendant that his lights must be connected within thirty minutes the manager of defendant went to plaintiff's place of business to investigate, and, upon being shown the canceled check, plaintiff's lights were immediately connected.

"An equitable estoppel in pais requires, as to the person against whom the estoppel is claimed, opportunity to speak, duty to speak, failure to speak, and reliance in good faith upon such failure." Words and Phrases, First Series, vol. 3, page 2498.

On the same page, the following definition is given of estoppel:

"To constitute an estoppel, the following elements are essential: (1) There must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or, at least, the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or, at least, with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. * * * (6) He must in fact act upon it in such a manner as to change his position for the worse."

Every element of estoppel, as above defined, is present in this case.

In the case of Wilson Sewing Machine Co. vs. Southern Express Co., 42 La. Ann. 593, 7 So. 710, 712, the court said:

"The foregoing doctrine is fully applicable here, and sanctions the formulation of the doctrine of estoppel, sustained by universal jurisprudence, to the effect that an equitable estoppel arises when a party to an action has by his faulty and negligent conduct induced his adversary either to do or to admit some act or acts, by means of which the loss which is claimed against him might have been averted."

When the lights were disconnected at his residence, plaintiff was not at home, and it is not shown that his wife had any knowledge that the bill had been paid, and in fact her offering to pay the bill at that time convinces us that she did not know it had been paid. Therefore the plea of estoppel to the claim for damages for disconnecting the lights of the residence is not good, and plaintiff is entitled to recover whatever damage was caused him by that

act of the defendant. The lights at the residence had been cut off a month or two prior to this time for failure to pay his bill, and therefore we fail to see where plaintiff could have been greatly chagrined or embarrassed by this act. His wife was deprived of the use of a fan for the greater part of the day, and some roomers were deprived of using the electric iron. There is such small damage proven, if any, that we feel plaintiff is only entitled to nominal damages for the mistake of defendant.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended by reducing the amount of said judgment in favor of the plaintiff from $50 to $5, and that, as so amended, the judgment of the lower court be affirmed. Cost of appeal to be paid by plaintiff, appellee.