Plaintiff brought this suit to recover damages occasioned by the cutting off by defendant's employees of the electric current at plaintiff's home at Lacombe, in St. Tammany Parish.
Plaintiff, a practicing attorney, has his residence at Lacombe, St. Tammany Parish, but his office is situated in the City of New Orleans, in the Parish of Orleans. The defendant is a public service corporation supplying electricity to those residing in the rural district of St. Tammany Parish, with an office in the Town of Slidell, in said Parish, and had been supplying electricity to the residence of plaintiff for some years prior to the alleged cutting off of the electric current.
It appears from the evidence that defendant, prior to the cutting off of the electric current, had submitted to plaintiff monthly bills for the use of electricity, upon each of which bills it was declared that the due date was on or before the 10th of the current month.
It appears further from the evidence that defendant submitted to plaintiff, on or about April 1, 1935, a statement or card showing a charge of $19.43 for electricity used by the plaintiff from 2/15/35 to 3/15/35 plus a merchandise account of $5.60, with the usual notation that the same was due on or before the 10th of the month; that this bill became delinquent, and that thereafter, between April 10, and April 15, 1935, a delinquent notice was sent to plaintiff informing him that this bill had not been paid by the 10th, and advising him that unless payment thereof was made by April 20, 1935, his services would be disconnected and a payment of $1 would be required as a charge for reconnection.
On April 26, 1935, the amount due by plaintiff not having been paid, defendant's employees, without further notice to the *Page 444 
plaintiff, proceeded to the residence of plaintiff and cut off the service. Plaintiff, being in New Orleans, was advised at about 9:30 in the morning that his two refrigerators were not working. Whereupon, he advised defendant's agent at Slidell to that effect. Defendant's agent, not knowing of the disconnection of the service, informed plaintiff that he would immediately investigate the same, and at about 3:30 of that evening informed plaintiff that his service had been disconnected for the nonpayment of the bill, and upon the payment thereof together with the $1 charge for reconnecting, the service would be reinstated. Plaintiff agreed to send defendant a check in payment of his bill in full, including the $1 charge for reconnection. The services were reconnected that same day.
Plaintiff filed this suit on May 4, 1935, claiming $1,000 damages for trespass on his premises by the employees of defendant and for humiliation and embarrassment. He also prayed for the recovery of the $1 paid for the reconnection of his services of electricity; he contends that there was no contractual relationship between the company and himself wherein he was supposed to pay his bills at any definite set date or time during the month the bill became due, and that in the event such a contractual relationship was found to exist, then and in that event the defendant had waived such provision by accepting, without objection, the payment of his bills for several previous months long after being due.
The defendant offered as a defense that plaintiff had contracted for its electrical service, and that the contract stipulated that plaintiff was to pay his bill as it became due at defendant's office within ten days from rendition of the bill, and in the event of nonpayment defendant's employees were granted the right of entry on plaintiff's premises for the purpose of disconnecting the service, and that a charge of $1 would be assessed for reconnection; that it had acted in pursuance thereof.
There was judgment below for the plaintiff in the sum of $10, as damages, plus the $1 paid for the reconnection. This judgment was rendered oh December 18, 1939, and on December 14, 1940, plaintiff obtained and perfected a devolutive appeal from only that part of the judgment dealing with the amount of damages allowed. The defendant has answered the appeal, asking that the judgment of the lower court be reversed; and, in the alternative, if it be held to be liable, then and in that event, that the judgment be affirmed as being ample under the circumstances of the case.
In this court, plaintiff contends that the only question at issue is the quantum of damages in that: (1) Defendant had acquiesced in the judgment on December 28, 1939, by sending plaintiff a check for $11 in payment of the judgment and promising to pay the costs, which check plaintiff refused and returned to them; (2) that his appeal was confined to only that part of the judgment relating to the amount of damages.
We fail to see wherein defendant has acquiesced in the judgment by the sending of a check for the payment of the amount awarded when plaintiff refused the check and returned it; the judgment was not paid; the rights and liabilities remained as fixed by the judgment. To take away the right of appeal (and, of course, the right to answer an appeal), there must be an unconditional, voluntary and absolute acquiescence in the judgment. Cooper v. Federal Land Bank, La.App., 197 So. 822.
Plaintiff had a right to appeal from only that part of the judgment having reference to the amount of damages, Code of Practice Art. 592; but, in so doing, the whole judgment is before us, since the appellee has exercised his right under Code of Practice Article 888 of answering the appeal, by asking for a reversal and, in the alternative, for an affirmance. Alengi v. Hartford Accident Ind. Co. et al., 183 La. 847, 165 So. 8.
We find in the record several statements or cards for electric current sent to the plaintiff by the defendant during the year 1934, and in the first part of 1935. These are printed forms of bills on cards sent out monthly by the company to its customers and have printed on them in rather prominent type the notation that "This bill is due and payable on or before the 10th of the current month." Nothing is said on these monthly bills about disconnecting the current if the bill is not paid by the 10th. Plaintiff testified that he did not have any specific day to pay his bills; many, if not most, of the bills sent to the plaintiff were paid by him after the 10th of the current month without any protest or complaint by the defendant. The March 1, 1935 bill was not paid by the plaintiff before March 18, 1935, eight days after it *Page 445 
was due. Plaintiff further testifies that he never received any "cutoff notice" for the bills prior to the April 1, 1935 bill.
The plaintiff admits that he received a statement or bill for electric current consumed by him supposedly sent to him on April 1, 1935, and payable on or before April 10, of that month. He states that this bill did not impress him any more than prior bills. He admits having received, around April 15, a pink slip notice addressed to him from the defendant, showing that his electric service bill from 2/15/35 to 3/15/35, amounting to $19.43, was unpaid and past due, with a notation in the left margin of the notice as follows: "Final cut out notice. Last day to pay 4/20/35. Reconnection fee $1.00". Plaintiff admits that this was the first notice of this kind ever received by him, but since the marginal notice was all printed except the figures 4/20/35, he did not deem it of any importance or varying the custom existing between defendant and himself.
There is no question but that a course of dealing had arisen between plaintiff and defendant whereby the latter had condoned and acquiesced in the practice of the plaintiff in the paying of his bills during the current month at a time which was convenient to him. The only question is whether or not the notice sent to and received by plaintiff between the 10th and 15th of April, with the notation on it as above stated, was sufficient to apprise plaintiff and put him on guard that it was the intention of defendant to put an end to plaintiff's custom or practice and to no longer indulge the plaintiff in the payment of his bills after they became due.
We concede that the defendant had the right to disconnect its service for the nonpayment of its charges; but, in this case, we feel that it should not have resorted to this remedy without giving plaintiff ample warning. Under the facts of this case, it is our conclusion that it was the duty of the defendant company to have given the plaintiff further warning than the mere printed notation on a notice of the past-due account which plaintiff assumed to be no more binding and threatening than the usual monthly notices which he had been receiving, and to which he had seldom conformed without any complaint or action on the part of the company. It would have been different had the company written him a personal letter or given him some definite and personal warning that the company no longer intended to indulge him in the payment of his bills and expected him to pay his bill by a certain date, and if it was not paid by that date, that his service would be discontinued or cut off. Of course, these indulgences toward plaintiff did not prevent the company from enforcing collection of its bills when due; but, before changing its course of dealing with plaintiff in this case and resorting to the remedy of cutting off the electric service, it was defendant's duty to give him a more definite and certain notice of its intended actions. The trial judge was correct in finding the defendant liable.
As to the amount of the damage, the judge was correct in holding that plaintiff was only liable for nominal damages. It does not appear that the agents of the defendant company acted with any wilful intent to harm or embarrass the plaintiff. They certainly had reasonable grounds to believe that they were within their rights in cutting off the current. Under the authority of the two cited cases of Swain v. Louisiana Light Power Co., 13 La.App. 515, 128 So. 538, and Cox v. Louisiana Power Light Co., La.App., 150 So. 863, the award of $11 made by the trial judge is correct.
For these reasons, the judgment appealed from is affirmed.