**Lawrence Eugene CARVER, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Appellee.**

**No. 18100.**

United States Court of Appeals
Fifth Circuit.

April 13, 1960.

August J. Bubert, Leonard S. Ungar, New Orleans, La., for appellant.

John V. Baus, New Orleans, La., for appellee.

Before RIVES, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Lawrence Carver, appellant, was injured in an accident that occurred when the automobile in which he was a passenger was hit by a truck driven by an ice cream vendor named Otis Gibson. The truck bore a sign advertising Melba ice cream. In the mistaken belief that Gibson was an employee or agent of the Melba Ice Cream Company of New Orleans, Louisiana, Carver sued Melba's insurer under the Louisiana Direct Action Statute, LSA–R.S. of 1950, 22:655. For reasons of his own, the plaintiff did not join Gibson as a co-defendant: joinder of the alleged tortfeasor, however, would have interrupted prescription.[1] Melba was a stranger to the accident: Gibson was a peddler, on his own, who bought Melba ice cream for resale to consumers. In no sense was Gibson an employee or agent of Melba's, nor was he held out as Melba's employee or agent.

Dates are important here. December 29, 1958, exactly nine months after the accident, Carver brought suit against Liberty Mutual Insurance Company, the liability insurer of F. E. McCray doing business as the Melba Ice Cream Company. Carver made no demand on McCray or Liberty Mutual. Neither knew of the accident until the complaint was served on Liberty Mutual, January 6, 1959. January 19, 1959, the defendant moved for a sixty-day extension of time to plead in order to investigate the accident. The district court granted the extension, giving Liberty Mutual until March 26, 1959 to plead. March 30, 1959, four days after the expiration of the sixty-day extension, Liberty Mutual filed

1. The Louisiana Direct Action Statute, LSA–R.S. of 1950, 22:655, provides that the tortfeasor and his insurer shall be liable in solido. "A citation served upon one debtor *in solido* * * * interrupts the prescription with regard to all the others and even their heirs." LSA–Civ. Code, art. 3552.

a motion for summary judgment. March 30, 1959, was one day after the expiration of the one-year prescriptive period provided for tort actions in Louisiana.[2]

Liberty Mutual supported its motion for a summary judgment with the affidavits of Gibson, McCray, and the Claims Supervisor of the New Orleans Office of Liberty Mutual. The plaintiff filed no countervailing affidavits. By stipulation, Gibson's testimony was taken for purposes of discovery.

There is no dispute as to any material fact. Gibson bought ice cream from Melba at a wholesale price and peddled it at a retail price. He paid cash. Melba did not employ him in any capacity; did not pay him any wages, salary, or commission; had no right to direct or control his peddling; assigned him no territory; did not contribute to his expenses; and in no way directed or influenced the manner in which he conducted his business. Gibson's truck was under lease from a third person, not a party to the suit, who had no business relationship whatever with Melba.

Melba's insurance policy is a standard Louisiana automobile liability policy. The named insured was "Melba Ice Cream Company". The policy insured all vehicles owned or operated by Melba. It contained no provision insuring the liability of peddlers who may have purchased Melba products.

On this uncontroverted evidence the district judge granted Liberty Mutual's motion for a summary judgment. Carver appealed. After the summary judgment was rendered and the appeal taken, Carver filed a motion for relief from the summary judgment, under Rule 60 (b) (3) and (6), F.R.Civ.P., 28 U.S.C.A. This motion rested on the contention that since the defendant did not file its motion for summary judgment within the one-year prescriptive period and within the time fixed by the court for filing defensive pleadings, when a timely filing and disclosure of the facts would have warned the plaintiff of the peril to his claim, the insurer is estopped to deny that Gibson was an employee or agent of the insured. The motion for relief was denied.

On appeal Carver contends that the district court erred in finding that the facts were insufficient to constitute equitable estoppel and in finding that there was no genuine issue on the material facts essential to establish an agency relationship between Gibson and Melba.

## I.

On the showing below, Melba was a complete stranger to Carver. It had nothing to do with the accident producing the injury that was the subject of the suit. And, the post-accident relationship of Melba to Gibson or to Carver cannot be said to affect liability determinable at the time of the accident. But, says Carver on appeal, virtually abandoning his original claim, "I was injured by the insurer's inaction and belated action, but for which I would have known the facts and preserved my claim". The short answer is that he did not sue for such an injury. He brought a run-of-the-mine complaint based on the allegation that Melba's driver was responsible for the accident.

A somewhat longer, different answer to the appellant's argument is that we can find no affirmative legal duty on the insurer to speak up and furnish facts to the plaintiff which would warn him that his right of action was in jeopardy. The insured and the insurer did not create the perilous situation and took away nothing from the plaintiff. There is no allegation and no evidence that they misled or deceived the plaintiff. They simply failed to furnish facts at a time when the facts would have been helpful to the plaintiff. There is no principle of law that requires a defendant to confer benefits on the party suing him.

Counsel for the insurer strongly resents the possible implication that he deliberately misled the plaintiff's counsel. He insists that he was in good faith and that he handled the claim in a routine

2. LSA–Civ.Code, art. 3536.

manner. Even if we assumed that the insurer and insured remained silent until after prescription had run, to protect one of the insured's customers, the legal situation would be unchanged. There was no relationship between the ice cream company and one of its purchasers and between the defendant and the plaintiff that would necessarily impose a duty on the defendant to go to the aid of the plaintiff. If a plaintiff has sued the wrong defendant, it is the plaintiff who has made the mistake. It is not up to the defendant to help the plaintiff correct the mistake, regardless of the effect of defendant's silence on the application of the law of liberative prescription.

On balance, it seems to us that it would be a far greater wrong to hold the insurer liable for damages for an injury suffered in an accident for which the insured was not responsible, than to hold, as we do, in the circumstances of this case, that the plaintiff has the burden of preserving his claim against the tortfeasor without help from the stranger who was sued.[3]

## II.

Louisiana courts recognize the doctrine of equitable estoppel. Harvey v. Richard, 1942, 200 La. 97, 7 So.2d 674; Parker v. Ohio Oil Co., 1939, 191 La. 896, 186 So. 604; State ex rel. Porterie v. Gulf, Mobile & N. R. Co., 1938, 191 La. 163, 184 So. 711; Swain v. Louisiana Light & Power Co., 1930, 13 La.App. 515, 128 So. 538. But, declares the Supreme Court of Louisiana, "The cases holding that estoppels are not favored by our courts are legion in our jurisprudence." Harvey v. Richard, supra, 7 So.2d at page 677. It is an affirmative plea, and the party who relies upon it carries the burden of establishing the facts to support it. Parker v. Ohio Oil Co., supra.

The cases appellant cites in his brief are inapplicable. All involve business transactions in which a person is intentionally deceived or unintentionally misled by the ambiguous relationship of an alleged agent or employee to his alleged principal or employer. These are cases where there is an affirmative obligation to speak. Mere silence or inaction does not raise an estoppel. Harvey v. Richard, supra. Estoppel by silence arises only where a person is under a duty to another to speak. "Where the conduct relied upon to invoke the principle of estoppel is silence, it must appear that the party has remained silent when it is under a duty to speak." California Packing Corp. v. Sun-Maid Raisin Growers, 9 Cir., 1936, 81 F.2d 674, 679, certiorari denied 298 U.S. 668, 56 S.Ct.

---

3. This case is somewhat analogous to the Good Samaritan cases posing the problem of the liability of a stranger to one in peril for failure to go to the rescue of the person imperiled. In effect, though not by articulated argument, the appellant abandoned his claim for damages from the injury suffered in the automobile accident and shifted to the claim that he is entitled to recover for the injury caused by the insurer's failure to warn him of the prescriptive peril to his claim against the tortfeasor. The problem, in most cases more moral than jural, naturally has intrigued jurists and philosophers—if not many working judges. Cahn says: "[W]e find the law in a steady movement toward requiring acts of Good Samaritanism. * * * [But] if the person in peril is a complete stranger to the passerby then American courts are unwilling to hold the latter liable for damages unless he had something to do with creating the state of peril. But they do gradually move the law forward by whittling away at the concept of 'stranger'. Step by step, they have discovered one relation after another between the passer-by and the peril which will justify them in imposing a legal duty to assist and to rescue." Cahn, The Moral Decision, pp. 190–191 (Ind. Press, 1956). See also, for example, to cite but a few authorities: Bentham, An Introduction to the Principles of Morals and Legislation, c. 17 XIX, note 1 (Lafleur ed. 1848); Ames, Law and Morals, 22 Harv.L.Rev. 97 (1908); Bohlen, The Moral Duty to Aid Others as a Basis of Tort Liability, 56 U. of Pa.L. Rev. 217 (1908); IV Pound, Jurisprudence, c. 24, Section 123, p. 177 (West, 1959); Davitt, Elements of Law, pp. 243–252 (Little Brown, 1959). In the instant case there is just not a sufficiently close relationship of Melba to the victim or to the peril to justify making law of the parable of the Good Samaritan.

833, 80 L.Ed 1391. See also Clark v. Fisher, 2 Cir., 1925, 8 F.2d 588, certiorari denied 269 U.S. 570, 46 S.Ct. 26, 70 L.Ed. 417.

Equity aids the vigilant. Carver allowed most of the year to elapse before filing suit. He had the name of the tortfeasor and if he wished to interrupt prescription on his claim as to all parties, he had only to join Gibson with Melba or Liberty Mutual. If he needed more information, the discovery process was available to him. Whatever facts the appellee turned up in two months could have been ascertained by appellant in twelve months, even without a trained investigator. Had the appellant made a timely demand on Melba or his insurer, instead of filing suit without any prior notice, it is likely that he would have discovered the lack of insurance coverage in time to preserve his claim against the tortfeasor. Had the appellant acted promptly on the appellee's failure to plead by March 26, 1959, there would still have been a short time in which to learn the facts and sue the tortfeasor.

Whatever the defendant did or did not do took place *after* the accident. It related not to the injury from the accident but to the injury, if any, from the defendant's not furnishing facts which would have preserved the plaintiff's claim. Neither the principle of equitable estoppel nor the doctrine of respondeat superior therefore, are properly in this case where the complaint is based on the injury suffered in the accident.

### III.

Carver's argument that the jury should be allowed to determine whether an agency relationship existed does not merit a lengthy discussion. Carver filed no affidavits or depositions. The evidence in the record shows no agency relationship between Gibson and Melba Ice Cream Company. The facts in the defendant's affidavits are taken as true when the plaintiff files no counter-affidavits. Foster v. General Motors Corp., 7 Cir., 1951, 191 F.2d 907, certiorari denied 343 U.S. 906, 72 S.Ct. 634, 96 L.Ed.

1324; Winrod v. McFadden Publications, D.C.N.D.Ill.1945, 62 F.Supp. 249, affirmed 7 Cir., 187 F.2d 180; Seward v. Nissen, D.C.D.Del.1942, 2 F.R.D. 545. The affidavits of McCray and Gibson and the deposition of Gibson controverted the unverified averment in the complaint that Gibson was an employee of Melba Ice Cream Company. In the absence of counter-affidavits or other evidence to prove the agency relationship, there was no genuine issue to submit to the jury. The trial judge correctly granted the defendant's motion for a summary judgment. Board of Public Instruction, etc. v. Meredith, 5 Cir., 1941, 119 F.2d 712, certiorari denied 314 U.S. 656, 62 S.Ct. 109, 86 L.Ed. 526; Beedy v. Washington Water Power Co., 9 Cir., 1956, 238 F.2d 123; Crosby v. Oliver Corp., D.C.S.D. Ohio 1949, 9 F.R.D. 110; Geller v. Transamerica Corp., D.C.D.Del.1943, 53 F.Supp. 625, affirmed 3 Cir., 151 F.2d 534.

Affirmed.