Joseph Albert **JUDICE**, Appellant,

v.

**SUMNER SOLLITT COMPANY OF TEXAS**, Appellee.

No. 6378.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 16, 1961.

Rehearing Denied March 15, 1961.

S. K. Long, Pt. Arthur, for appellant.

Marcus & Weller, Beaumont, for appellee.

ANDERSON, Chief Justice.

The suit is one for which special authorization is to be found in the Workmen's Compensation Law—in Art. 8307, Sec. 6a, Vernon's Ann.Civ.Statutes. Having first settled his claim for workmen's compensation, appellant, as plaintiff in the trial court, representing himself to have been injured through negligence of the defendants, sued Sumner Sollitt Company of Texas (a Texas corporation), Sumner Sollitt Company (an Illinois corporation), and Gulf Oil Corporation for damages because of personal injuries he alleges he sustained on or about January 19, 1957, while in the course of his employment as an employee of Maritime Guard, Inc., which was insured under the Workmen's Compensation Law by Texas Employers' Insurance Association. However, he did not make all three defendants parties to the suit at the same time. Appellee, Sumner Sollitt Company, the Illinois corporation, was not made a party until March 19, 1959. This was not only more than two years after appellant claims to have been injured, but more than two years after the Industrial Accident Board had approved a compromise settlement agreement appellant and Texas Employers' Insurance Association had entered into with reference to appellant's claim for workmen's compensation. The other two defendants, Sumner Sollitt Company of Texas and Gulf Oil Corporation, were sued within two years from the date on which the Industrial Accident Board approved the compromise settlement agreement. Sumner Sollitt Company, the appellee, by special plea in the nature of a plea in abatement, pleaded the two year statute of limitation (Art. 5526, V.A.C.S.) in bar of appellant's alleged cause of action. As a part of the same plea, appellee also pleaded the compromise settlement of appellant's claim for workmen's compensation, and that the settlement agreement was approved by the Industrial Accident Board on February 25, 1957. The limitation plea and the evidence that was offered in connection with it were heard during pretrial proceedings. Hav-

ing concluded that the plea was well founded, the trial court severed the suit against appellee from the one against the other two defendants, sustained appellee's plea of limitation, and decreed that appellant take nothing as against appellee. The appeal is from that judgment.

We hold the trial court to have been correct in sustaining appellee's limitation plea. The two year statute of limitation (Art. 5526, supra) is expressly applicable to the classification of actions into which appellee's action falls—actions "for injury done to the person of another." Limitation began to run the day after that on which the Industrial Accident Board approved the compromise settlement agreement by which appellant and Texas Employers' Insurance Association compromised and settled appellant's claim for workmen's compensation. Brooks v. Lucky, Tex.Civ.App., 308 S.W.2d 273. The record indisputably establishes that the Board approved the settlement agreement on February 25, 1957. Appellee, as previously stated, was not made a party to the suit until March 19, 1959. By that time, the limitation period had elapsed.

Neither the record nor the law is believed to support appellant in his contention that the Industrial Accident Board's order of February 25, 1957, approving the compromise settlement agreement was void and was therefore inoperative to start limitation running against his cause of action against appellee.

Appellant argues that neither the liability of Texas Employers' Insurance Association nor the minimum benefits to which he himself was entitled were uncertain, indefinite or incapable of being satisfactorily established, and that the Industrial Accident Board was therefore without legal authority to approve the settlement agreement it approved: an agreement that in settlement of his claim for a hernia the association would pay him $200.00 and would pay a named hospital not exceeding $250.00 and

a named doctor not exceeding $200.00. He contends that by agreeing to pay for his hernia operation the association admitted liability for his injury. He apparently construes National Mut. Casualty Co. v. Lowery, 136 Tex. 188, 148 S.W.2d 1089, 1091, as authority for the proposition that, regardless of the attending circumstances, an insurer admits liability by paying for or by tendering or agreeing to pay for a hernia operation. In justification of that construction, he seizes upon the court's acknowledgment that the effect of its holding in the case is to compel insurers "to admit liability in all hernia cases, or run the risk of being held liable for general injuries if the case goes to court"; the holding having been that the plaintiff's action because of a hernia had stood for trial as an action for general injuries, no operation having been either tendered by the insurer or ordered by the Industrial Accident Board. He couples with his claim of admitted liability the principle that for a hernia one is entitled to compensation for a minimum of twenty-six weeks, even though an operation is submitted to and is successful (Art. 8306, sec. 12b; National Mut. Casualty Co. v. Lowery, supra), and he points out that he agreed to settle his claim for less than one-third the amount that would have accrued to him over a period of twenty-six weeks. He says that this adds up to the Industrial Accident Board's lack of authority to approve the settlement agreement. He cites in this connection Art. 8307, sec. 12, V.A.C.S., and Texas Employers' Ins. Ass'n v. Brannam, Tex.Civ.App., 245 S.W.2d 271, 273, a case in which it was said: "In order to give the Industrial Accident Board the authority to approve a compromise it is necessary that liability of the insurance carrier or the extent of the injuries be uncertain, indefinite or incapable of being satisfactorily established. Art. 8307, Sec. 12, Vernon's Civil Statutes." He rounds out his argument by calling attention to the principle that an agreement to compromise and settle a compensation claim is without legal consequence until it has been approved by the Industrial Accident Board (Garrett v. United States Fidelity & Guaranty Co., Tex.Civ.App., 77 S.W.2d 1066, reversed on other grounds 129 Tex. 587, 105 S.W.2d 868), and goes on to say that limitation could not have begun running against his cause of action against appellee earlier than July 3, 1958, at which time Texas Employers' Insurance Association paid him the additional sum of $1,327.05 and procured from him a written instrument by the terms of which he ratified and confirmed the earlier settlement agreement and covenanted to take no action to set is aside.

Although the latter agreement was neither approved by nor presented to the Industrial Accident Board, appellant says that he elected to treat it as final and proceeded to sue the third party defendants.

■ A major premise of appellant's argument, as will have been noted, is that by agreeing to pay for a hernia operation Texas Employers' Insurance Association, as a matter of law, admitted liability as for an injury resulting in a hernia. It is a premise we are unable to accept. The association denied liability on appellant's claim, and it was only by way of compromising and settling the claim that it agreed to pay for an operation. In such circumstances, the law does not convert the agreement into an admission of liability.

The contrary was neither held nor implied in National Mut. Casualty Co. v. Lowery, 136 Tex. 188, 148 S.W.2d 1089, supra. No compromise settlement agreement was there involved, and the case is not otherwise in point on the facts that are before us. In order for the holding in that case to be given application here, it would be necessary to construe it as prohibiting compromise settlements of claims for workmen's compensation in hernia cases, and we think it is not reasonably susceptible to that construction.

■ Appellant has undertaken to make a collateral attack on the Industrial Acci-

dent Board's order of approval. We are not of the impression that he is contending, as an alternative proposition, that he may in this manner attack the order on the ground that in fact the association's liability was not uncertain, indefinite or incapable of being satisfactorily established. But if he is, he is in error. Davis v. Commercial Standard Ins. Co., Tex.Civ.App., 194 S.W.2d 599; Estes v. Hartford Accident & Indemnity Co., Tex.Civ.App., 46 S. W.2d 413.

There having been no admission of liability by Texas Employers' Insurance Association, appellant's entire theory for circumventing the statute of limitation falls.

The fact that on July 3, 1958, Texas Employers' Insurance Association paid appellant $1,327.05 in addition to what it had previously paid him does not alter the situation. His first operation having been unsuccessful, and he having undergone two additional operations, appellant had apparently threatened to undertake on equitable grounds to set aside the compromise settlement agreement that had been theretofore approved by the Industrial Accident Board. The association merely bought its peace, and the instrument appellant signed in connection with the later payment makes this amply clear.

Appellant has raised one other matter, but he does not appear to have taken it very seriously. He contends that the trial court should have held appellee estopped to plead limitation, due to the fact that the Secretary of State issued appellee a permit to do business in Texas despite the similarity of its name to that of Sumner Sollitt Company of Texas, and due to the fact that appellee failed to come forward after he himself had sued Sumner Sollitt Company of Texas and make known that it was it that appellant should be suing. It is questionable as to whether these matters were raised in the trial court; but be that as it may, they present no error. Appellee owed appellant no duty to volunteer itself for suit. Carver v. Liberty Mu-

tual Ins. Co., 5 Cir., 277 F.2d 105. And, on the record as made, we perceive no just basis for holding it accountable for the acts of the Secretary of State.

No reversible error having been presented, the judgment of the trial court is affirmed.