Henry J. BENNETT, Jr.,
Plaintiff-Appellee,

v.

CITY OF SLIDELL, Gerry Hinton, B.E. McDaniel, Nunzio Giordano and Patrick J. Berrigan, Defendants-Appellants.

No. 81–3236.

United States Court of Appeals,
Fifth Circuit.

Feb. 7, 1983.

Lawrence D. Wiedemann, Allain F. Hardin, New Orleans, La., for Gerry Hinton, et al.

Lloyd R. Walters, Slidell, La., for City of Slidell.

David W. Oestreicher, II, New Orleans, La., Fernando J. Estopinal, III, Slidell, La., for plaintiff-appellee.

Before GARZA, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Invoking 42 U.S.C. § 1983, Henry J. Bennett, Jr. sought damages from the City of Slidell, its council members, mayor, chief administrative officer, and city attorney,[1] for delays experienced in securing a liquor license and an occupancy permit for his lounge in Slidell, Louisiana. The jury returned a verdict against the city for $20,000, against city attorney Patrick J. Berrigan for $1,000, and against councilmen Gerry G. Hinton, B.E. McDaniel and Nunzio Giordano for $1,000 each.[2] The trial judge denied defendants' motion for judgment n.o.v. or, alternatively, for remittitur or new trial. 518 F.Supp. 59. Concluding that the evidence does not support judgment against the councilmen, we reverse as to them. We affirm the judgment against the City of Slidell and Berrigan.

*Facts*

From 1972 until May 1975, Bennett operated a lounge in Slidell, Louisiana, known as "Fooser's Den." Thereafter, he leased, with option to buy, the premises at 3745 Pontchartrain Drive, Slidell. Bennett planned to open a lounge to be known as "Club Rustique." During early June 1975, John Coerver, who was the owner of property adjoining 3745 Pontchartrain Drive and Auditor for the City of Slidell, made known to Bennett his intention to oppose the lounge. In doing so, Coerver emphasized his influence in the city and his intent to use that influence.

On June 11, 1975, Bennett applied for a building permit in order that he might begin repairs and renovations of the proposed lounge. This permit was issued shortly thereafter by Bill Dugas, the city building inspector. Typically, once the necessary repairs and additions were made and an application submitted, the occupancy permit would have been routinely issued.

On July 7, 1975, Bennett applied to the city council for a liquor license. The application conformed to law but was not acted on by the council until its meeting on August 12. In the interim, the council received a letter from Coerver objecting to Bennett's application.[3] At the meeting, a question was raised whether the liquor license should be issued before Bennett obtained an occupancy certificate. The question was not resolved.[4] A resolution to issue the permit was defeated by the nay votes of Giordano, Hinton and McDaniel.

1. Central Louisiana Electric Company, originally named as a party defendant, was voluntarily dismissed by Bennett.

2. The jury returned judgments in favor of two other defendants, Frank Cusimano, mayor, and Keith S. Ingram, chief administrative officer.

3. In a letter dated July 24, 1975, Coerver, ostensibly on behalf of all property owners around 3745 Ponchartrain Drive, stated:

Our objections are based on the fact that the property in question measures only thirty (30) feet wide by a depth of approximately two hundred forty-four (244) feet. There is a ten (10) foot easement between the Lakeside Building and the proposed establishment, and this is the only access available to any possible parking space available in the rear of the building. Please bear in mind that this easement allows only for one way traffic because of the size, and must be open at all times. In the front of this building there is space for approximately four (4) automobiles and that is all. We would also like to point out that based upon plans of the Highway Department construction along Pontchartrain Drive, there will be controlled access to properties and according to these plans there will be one access available to the Lakeside Building and the proposed location along the previous mentioned perpetual easement.

4. The minutes of the August 12, 1975 meeting read:

Acting upon the liquor permit request of Mr. Henry Bennett, Jr., d/b/a Club Rustique,

On August 21, 1975, Coerver again wrote the city council, this time objecting to issuance of an occupancy permit to Bennett.[5] Again purporting to write for the adjacent property owners, Coerver stated: "We ... are requesting ... the complete parking area of this establishment be surfaced with a minimum of four inches of concrete or similar all-weather surface as specified in Section 4.1 of the Zoning Ordinance of Slidell, Louisiana." [6]

On August 22, 1975 Bennett filed suit against the city seeking an order mandating issuance of the liquor license. The council immediately met in special session and determined to defer action on his application pending resolution of the litigation. However, one month later, on September 23, 1975, the council met and issued the liquor license. Bennett's efforts to secure the occupancy permit continued to be unsuccessful.

Bennett testified that Dugas had informed him that oyster shells could be used for the surface of the parking lot. Other business places had shells in their parking areas despite the dictates of Ordinance 795. Bennett put shells on his parking area. Dugas denies telling Bennett that a shell surface would be considered adequate compliance with the ordinance, but conceded that other businesses had shell-surfaced parking lots.

Sometime prior to November 14, 1975, Dugas was ostensibly informed by an assistant that Bennett was using the building at 3745 Ponchartrain Drive despite the fact that no occupancy permit had been issued. Without investigating or otherwise confirming the accuracy of the information, Dugas notified Central Louisiana Electric Company (CLECO), by letter dated November 14, 1975, that Bennett was using the leased premises illegally. Five days later Berrigan, as city attorney, at Dugas' behest, wrote CLECO a letter which purported to give the utility "authority to disconnect electric power at The Club Rustique, 3245 [sic] Ponchartrain Drive, presently occupied by Henry Bennett." In response, CLECO discontinued electrical service.

Bennett ultimately paved the parking lot. In November 1975, two months after the grant of his liquor license, he received the occupancy permit.

On April 1, 1976, Bennett initiated the instant suit under 42 U.S.C. §§ 1983 and 1985. The city's motion to dismiss for failure to state a claim under *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), was granted. In June 1979, Bennett moved for reinstatement of the city consistent with the intervening teachings of *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56

---

3745 Ponchartrain Drive, it was moved by Councilman Hinton, and seconded by Councilman McDaniel that a clarification of procedure be obtained from the City Attorney's office whether a liquor permit may be approved before the City's Certificate of Occupancy is secured.
ROLL CALL: 2 yeas 2 nays 1 absent TIED

5. The record reflects that the city building inspector—Dugas—had authority to grant or deny the occupancy permit. An appeal from his decision could be taken to the city council. Although the record does not disclose Coerver's reason for writing the council, presumptively he was anticipating an appeal by Bennett.

6. Section 4.1 of the Slidell Zoning Ordinance No. 795, relevant to this case and in effect in 1975, read:
Off-street parking facilities for one family and two family dwellings shall be located on the same lot or plot of ground as the building to be served. The location of off-street park-

ing facilities for other uses shall not be more than 300 feet distant measured along the nearest pedestrian walkway, provided, however, that the zoning classification for such land is the same or less restrictive than the classification of the lot upon which the main use is located.
Such parking space to be used in conjunction with the principal use shall be reserved as such through an incumbrance of the title of the property to be designated as a required parking space, such incumbrance to be valid for the total period of the use or uses for which the parking is needed are in existence. Such agreement or covenant shall be duly recorded in the office of the clerk and recorder and a certificate furnished the building inspector. *Such parking space shall be surfaced with a minimum of four inches of concrete or similar all-weather surface and such entrances shall be similarly surfaced.* (Emphasis added.)

L.Ed.2d 611 (1978). Reinstatement was allowed and, ultimately, the jury returned verdicts under § 1983 as noted. Bennett's § 1985 conspiracy claim was rejected.

## Limitations

■ The first issue raised by the city requires scant discussion. The city maintains that the limitation period for Bennett's suit expired between the time of the city's dismissal from the suit and the later reinstatement.[7] The city errs in its reasoning.

Aside from the fact that during the course of this litigation—after the trial court ordered the dismissal of the city and before the motion to reinstate was granted—the law regarding the liability of a municipality under § 1983 changed dramatically, with *Monell* overruling *Monroe v. Pape,* the city's argument is without merit. Under *McDermott v. Crown Zellerbach Corp.,* 418 F.2d 598 (5th Cir.1969), and *Carver v. Liberty Mut. Ins. Co.,* 277 F.2d 105 (5th Cir.1960), Bennett's suit against Berrigan and the city councilmen individually tolled the running of the statute of limitations against the city, since they were potential obligors bound *in solido* with the city. In addition, we note no prejudice by the reinstatement in 1979. *See Van Ooteghem v. Gray,* 628 F.2d 488 (5th Cir.1980). Bennett's claim was presented against the city seasonably.

## Liability of Councilmen

■ The imposition of liability upon the individual councilmen presents an issue of

substantial consequence. The three council members were cast in judgment because of their votes to deny Bennett's liquor license until he secured an occupancy permit, and their apparent failure to initiate an inquiry into Dugas' decision to withhold the occupancy permit until the requisites of Ordinance 795, as respects parking surfaces, were complied with. The record contains no credible evidence that the council members voted for any reason other than those patently apparent.[8] Further, the record reveals that the individual councilmen did not direct Dugas' day-to-day operation. Rather, the council was in the position to review Dugas' decisions if an appeal was made to it. Bennett never appealed Dugas' rejection nor did he complain to the councilmen about the delay.

A painstaking review of the record discloses insufficient evidence to warrant submission of the question of the liability of the councilmen to the jury. Bennett's evidence falls far short of proving a conspiracy among the councilmen, mayor, city attorney and city building inspector with respect to the liquor license application. And the council never acted with respect to the occupancy permit. Hinton, McDaniel, and Giordano were entitled to judgment dismissing the demands against them as a matter of law.[9]

## Liability of the City

■ We affirm the judgment against the city because of the evidence that Dugas

---

7. 42 U.S.C. § 1983 does not contain a limitations period but borrows from state statutes of limitations which treat analogous circumstances. In this case, Louisiana law, under CC arts. 2315 and 3536, allows one year in which to sue for the type of tort which is the subject matter of Bennett's claim. Consequently, the period of limitation applicable for this case is one year. *See Kirk v. Cronvich,* 629 F.2d 404 (5th Cir.1980); *Lavellee v. Listi,* 611 F.2d 1129 (5th Cir.1980); *Kissinger v. Foti,* 544 F.2d 1257 (5th Cir.1977).

8. Speculation concerning personal bias and familial ties was raised at trial. But such conjecture is categorized properly as merely a "scintilla" of evidence, which "is insufficient to

present a question for the jury." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969).

9. Notwithstanding our decision in *Hornsby v. Allen,* 326 F.2d 605 (5th Cir.1964), that licensing proceedings are adjudicative and not legislative, the Supreme Court's teachings in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), and our decision in *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir.1981), may afford the councilmen immunity in a suit as is here presented. Because of our disposition of the claims against the councilmen, we leave that thorny question for another day.

acted with sufficient authority to qualify as an official within the intendment of § 1983, and that he applied the zoning ordinance in an unconstitutional manner, thus violating Bennett's due process and equal protection rights. *See Monell* and *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

Dugas admitted that other establishments similar to the "Club Rustique" operated in violation of the parking lot paving requirement,[10] but denied that Coerver's complaints influenced his decision to give the ordinance strict application in Bennett's case.

Nevertheless the city contends that holding it liable for Dugas' discriminatory enforcement of the zoning ordinance is not permissible under *Monell* since to do so would visit liability on a *respondeat superior* theory. We do not agree.

The rule of *Monell* is clear: "A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to rep-

resent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694, 98 S.Ct. at 2037. We view this case as fitting within these confines.[11] Dugas held the position of city building inspector. Berrigan was the city attorney. The record demonstrates that Dugas acted with official power in passing on occupancy certificate applications. He had been vested with this authority. The city building inspector's primary responsibility was to make certain that buildings complied with local ordinances; the means of carrying that responsibility out were through the issuance or denial of occupancy permits. It was precisely within this framework that the building inspector acted to deny plaintiff his constitutional rights. For whatever reason, be it political influence of Coerver or some other motive, Dugas singled out Bennett's occupancy application for a *strictissimi* application of Slidell's zoning ordinance—while ignoring the existence of similar violations in other parts of the town. Further, Dugas and Berrigan, acting in their capacity as city officials, secured the disconnecting of Bennett's electric power without notice or a

---

10. We note also the following exchange between Berrigan and Bennett's counsel:

Q. Are you aware of any policy by Mr. Dugas, the person that you were working with, in regard to the occupancy permit, whereby if a person owned an establishment, they did not have a paved lot, they had shells down, and if nobody complained, are you aware of whether or not Mr. Dugas would in fact allow that individual establishment to operate without adhering to the parking facility requirement?

A. Because of the soil conditions and the fact that no one would complain, no neighbor would complain, I believe that he did let some people open up.

Q. So, in fact, there were establishments within the City of Slidell which in effect were operating under conditions where, although the requirements called for a paved parking lot, they in fact were permitted to operate, and continue to operate, with shells, and without the necessity of paving it?

    \*    \*    \*    \*    \*    \*

Q. Were there several other commercial ventures in Slidell, during the time Mr.

Bennett was compelled to pave the parking area of his parking lot, which in effect, although under the zoning ordinance were required to be paved, were not?

    \*    \*    \*    \*    \*    \*

A. There probably was [sic] some, yes. There probably was [sic] some.

11. A succinct statement of an essential part of the issue before us today is contained in a law review article in the *Columbia Law Review* by one of the attorneys for the petitioners in *Monell:*

[W]hile there may be no express rules as to who may make policies, the primary responsibilities of an employee—what he or she is supposed to accomplish—will often be relatively clear. So long as a policy or action is reasonably related to carrying out those responsibilities, and so long as it has not been expressly precluded as a method of doing so, that policy or action should ordinarily be regarded as within the scope of the employee's delegated authority. Schnapper, Eric "Civil Rights Litigation After *Monell*," 79 *Columbia Law Review* 213, 222 (1979).

hearing.[12] This situation comes within the principle outlined by the Supreme Court in *Owen:*

> In this circumstance—when it is the local government itself that is responsible for the constitutional deprivation—it is perfectly reasonable to distribute the loss to the public as a cost of the administration of government, rather than to let the entire burden fall on the injured individual.

445 U.S. at 655 n. 39, 100 S.Ct. at 1418 n. 39.

### City Attorney

■ Berrigan claims that he was entitled to immunity from the § 1983 suit. We disagree. Berrigan was not acting as a prosecutor, *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), as a legislative council, *Green v. DeCamp,* 612 F.2d 368 (8th Cir.1980), or as a legislator, *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency.* He is not entitled to immunity in this action.

### Rebuttal Witness

■ As a final consideration, we discern no merit in the appellants' argument that the district court committed reversible error in denying them the opportunity to present a rebuttal witness. The stated purpose of the rebuttal witness was to show that Bennett was operating his lounge prior to obtaining his occupancy permit, an infraction which purportedly led to the disconnection of power. In refusing to allow the testimony of the tendered rebuttal witness, the trial judge observed that the witness was not listed in the pretrial order and that he was not "a rebuttal witness in the sense of what the rules contemplate a rebuttal witness to be." We will not disturb the district judge's ruling absent a showing of clear abuse of the broad discretion vested in the trial court by Rule 16 of the Federal Rules of Civil Procedure. *Davis v. Duplantis,* 448 F.2d 918 (5th Cir.1971).

The judgment against Hinton, McDaniel and Giordano is REVERSED and judgment is entered dismissing all claims against them. The judgment against Berrigan and the City of Slidell is AFFIRMED at their cost.

12. Unlike the problem presented in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), dealing with a claimed deprivation of due process by a purchase of power when the Metropolitan Edison Co. cut off service without prior notice and an opportunity to be heard, state action is evident in the present suit.