Henry J. BENNETT, Jr., Plaintiff-Appellee,

v.

CITY OF SLIDELL, Gerry Hinton, B.E. McDaniel, Nunzio Giordano, and Patrick J. Berrigan, Defendants-Appellants.

No. 81–3236.

United States Court of Appeals, Fifth Circuit.

April 2, 1984.

Frank M. RePass, III, New Orleans, La., for City of Slidell, Gerry Hinton, et al.

R. Gordon Kean, Jr., Pamela C. Walker, Baton Rouge, La., for amicus-Louisiana Municipal Assoc.

David W. Oestreicher, II, New Orleans, La., Fernando J. Estopinal, III, Slidell, La., for plaintiff-appellee.

Before CLARK, Chief Judge, BROWN, GEE, GARZA, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS,

GARWOOD, JOLLY and HIGGINBOT-HAM, Circuit Judges *.

REAVLEY, Circuit Judge:

Our question is whether the City of Slidell has 42 U.S.C. § 1983 liability under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for the conduct of two of its employees. The City has been held liable for damages to Henry Bennett caused by prejudicial treatment at the hands of the city attorney and building inspector. We hold that the City is not liable.

### 1. The Case Below

Bennett's complaint is the delay of a liquor license and an occupancy permit, which were required for the operation of his lounge, the Club Rustique, in Slidell. Under Louisiana law liquor licenses are issued by the city council. The Slidell city attorney, Patrick J. Berrigan, was slow to complete his review of the liquor license application and then advised council delay because of a legal question. The city building inspector, Bill Dugas, refused to issue the certificate approving premise compliance with city standards until Bennett had blacktopped a parking area of proper size, a city code requirement which was not uniformly enforced. At the instance of Berrigan and Dugas the electric service to the premises was discontinued for a time. The motivation for this unfair treatment was the opposition to Bennett's lounge from the owner of the adjacent property, who was also the city auditor and who boasted openly of his influence.

Bennett sought monetary damages by this suit under 42 U.S.C. §§ 1983 and 1985,

contending that the City and its officers deprived him of constitutionally protected rights to due process and equal protection. A jury found no conspiracy among the defendants but did find that the City acted outside lawful authority and deprived Bennett of a property interest without due process of law. The same findings were made against Berrigan and three members of the city council. Dugas was not sued. The city was assessed $20,000 and the individuals $1,000 each. The district judge denied the post-trial motions of defendants. *Bennett v. City of Slidell,* 518 F.Supp. 59 (E.D.La.1981). A panel of this court upheld the liability of the City and Berrigan but reversed as to the council members. *Bennett v. City of Slidell,* 697 F.2d 657 (5th Cir.1983). At the outset we reinstate the panel holding on all issues except that of the liability of the City.

### 2. City[1] Liability And The Unsettled Contour

Section 1983 provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

*Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), held that a municipal corporation was not a "person" within the meaning of this act. This holding was overruled in *Monell,* and now the governmental entity itself may be subjected to monetary as well as declaratory and injunctive relief.

---

* Judge Garza, now a senior judge of this circuit, is participating as a member of the panel initially deciding the appeal now subject to en banc review. 28 U.S.C. § 46(c). Judges Rubin and Davis did not participate in the consideration or decision of this case.

1. Throughout this opinion we speak of "city" liability. What is said, however, applies equally to any local governmental entity. The states and their instrumentalities, of course, are excepted by virtue of their Eleventh Amendment immunity from monetary liability. *Monell,* 436 U.S. at 690 n. 54, 98 S.Ct. at 2035 n. 54; *see*

*Quern v. Jordan,* 440 U.S. 332, 338–45, 99 S.Ct. 1139, 1143–45, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). There may be one difference: officers of county governments are often elected directly by the people to set governmental policy in particular areas. The source of their policymaking authority is the electorate itself, and their authority need not be connected to a council or other governing body. *See Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir.1980).

The Court in *Monell* held that local governments may be the targets of a § 1983 action where official policy or governmental custom is responsible for a deprivation of rights protected by the Constitution, but it rejected governmental respondeat superior liability under § 1983. The Court summarized its holding:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

436 U.S. at 694, 98 S.Ct. at 2037–38. The Court repeated this statement in *Owen v. City of Independence,* 445 U.S. 622, 633, 100 S.Ct. 1398, 1406, 63 L.Ed.2d 673 (1980), where the Court held that a municipality may not assert the good faith of its officials as a defense to its own liability.

In both *Monell* and *Owen* there was no question but that the objectionable conduct was city policy. No one challenged the assertion, in *Monell,* that the City of New York had maintained a policy which compelled pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons. In *Owen* official actions of the city council itself injured plaintiff's reputation without due process of law. There has been no occasion for the Court to address "what the full contours of municipal liability under § 1983 may be," as it said in *Monell,* 436 U.S. at 695, 98 S.Ct. at 2038. One of the unsettled questions is the identification of "those whose edicts or acts may fairly be said to represent official policy." Where the governing body itself does not commit the act or promulgate the policy or countenance the custom, under what circumstances will the conduct or policy or custom of an agent subject the city to liability? When that question is answered, the disposition of

the present case as well as many others will be altered and perhaps simplified.

### 3. Contours Under Veil

The district judge indicated during the trial that the City of Slidell would be bound if Dugas was acting pursuant to his city authority. No instructions were given the jury relative to the proof required to find the City liable, as distinguished from the elements of plaintiff's case against each of the individual defendants. In his order denying the City's post-trial motions, the judge justified the City's liability on two grounds: that unequal application of the building code by Dugas was pursuant to municipal custom or usage, and that the denial of the occupancy permit by Dugas represented official policy inasmuch as his decisions were never questioned. 518 F.Supp. at 60. The judge's difficulty at this point is easily understood when the various writings of this and other courts of appeals are considered. The panel of this court, in affirming the City's liability, said that *Monell* was satisfied because Dugas and Berrigan acted as officials within their authority. The court quoted an often cited article that seems to equate the policies of a city employee, if within the authority of his employment, with city policy. 697 F.2d at 661 n. 11, citing Schnapper, *Civil Rights Litigation After Monell,* 79 Colum.L.Rev. 213 (1979).

We stated in *Schneider v. City of Atlanta,* 628 F.2d 915 (5th Cir.1980), that in those areas where a city officer "is the final authority or ultimate repository of [city] power his official conduct and decisions must necessarily be considered those of one 'whose edicts or acts may fairly be said to represent official policy' for which the [city] may be held responsible under § 1983." *Id.* at 920. The *Schneider* court was quoting from *Familias Unidas v. Briscoe,* 619 F.2d 391, 404 (5th Cir.1980), where the governmental officer in mind was one elected directly by the people and whose authority was derived by office and state law and not from another governing body.[2] In *Bowen v. Watkins,* 669 F.2d 979, 989–90 (5th Cir.

---

2. The county judge, to whom reference was made in *Familias,* obtained his policymaking

authority by virtue of the office to which he was elected. The problem, with which the

1982), however, citing *Schneider,* the court again emphasized the matter of final authority (though subject to that of the governing body) as the touchstone of government policymaking. Other circuits have followed this rationale: *E.g., Rookard v. Health And Hospitals Corp.,* 710 F.2d 41, 45 (2d Cir.1983); *McKinley v. City of Eloy,* 705 F.2d 1110, 1116 (9th Cir.1983); *Berdin v. Duggan,* 701 F.2d 909, 914 (11th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983); *Williams v. City of Valdosta,* 689 F.2d 964, 969 (11th Cir.1982); *Hearn v. City of Gainesville,* 688 F.2d 1328, 1334–1335 (11th Cir.1982). *See* Goode, *The Changing Nature of Local Governmental Liability Under Section 1983,* 22 Urb.L.Ann. 71, 90 (1981). Still other courts have attributed to the city government the conduct of its senior employees. *Turpin v. Mailet,* 619 F.2d 196, 201 (2d Cir.1980) ("where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts"), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Hays v. Jefferson County,* 668 F.2d 869, 975 (6th Cir.1982) (failure of chief of police or assistant chief would be failure of county).

#### 4. Contours Better Defined

█ If a city may be liable only where the injury is inflicted in the execution of city policy, the complainant must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy. Plaintiff must, of course, prove that his injury was caused by city policy. We deal here with how policy may be attributed to the city.

##### a. City Policy (of City's Governing Body)

█ The interference with the rights of the plaintiff must be due to a violation for which the city government itself is responsible. Usually a council or commission will be the governing body to which responsibility must be attached. The council may violate rights of people by direct orders or by setting a course of action for city employees which, when followed by city employees, interferes with someone's rights. The council may set a course of action by its own promulgation or by the acceptance of a course set or conducted by city employees. In any event the course of conduct, whether formally declared or informally accepted, must be the policy of the city government if it is to be the basis of city liability.

█ We view custom to be one form which policy takes and by which it is proven, and we use "policy" to include the pattern of conduct in actual practice that may be called "custom." Section 1983 itself uses "custom" and "usage" in describing the aegis of state law under which a person must have acted to be subject to § 1983 liability. Our present inquiry is a different matter. We assume here that the city government, where it acted, did so under color of state law. Our question is whether the city was the person who acted to inflict the wrong. And we read the Supreme Court to require that the offending policy (including policy embodied in custom) be the policy or custom of the city government, i.e., the governing body which acts for the city, if that city is to be subject to liability as an actor under § 1983. The Court in *Monell* rejected vicarious liability of the governing body of the city and concluded that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." 436 U.S. at 691, 98 S.Ct. at 2036.

█ The Supreme Court in *Monell* wrote that practices of officials may become "so permanent and well settled as to constitute a 'custom or usage' with the force of law." 436 U.S. at 690–91, 98 S.Ct.

present opinion deals, of ascertaining whether an officer of a local government has received from the governing body the authority to make policy for the local government, simply did not exist in *Familias.*

at 2036 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)). In *Adickes,* a white school teacher was denied service at a lunch counter because she was in the company of blacks. The Court held that Adickes presented evidence of a claim under § 1983 for a deprivation of rights because service was refused under color of law, i.e., a state-enforced custom of segregation in public eating places. *Adickes,* 398 U.S. at 173–74, 90 S.Ct. at 1617. In describing "custom or usage," the Court used such phrases as "persistent and widespread . . . practices," "systematic maladministration" of the laws, practices that are "permanent and well settled," and "deeply embedded traditional ways of carrying out . . . policy." *Id.* In the context of the question of city liability for such persistent conduct of its employees, i.e., conduct that has become a traditional way of carrying out policy and has acquired the force of law, the persistent conduct must be attributable to the source of policy or law of the city, its governing body.[3] For example, in a Tenth Circuit case the county's maintenance of substandard detention facilities for the mentally ill, after attention of the county commissioners had been repeatedly called to the inadequacy of the facilities, constituted custom or policy of the county. *Littlefield v. Deland,* 641 F.2d

729 (10th Cir.1981). Sufficient duration or frequency of abusive practices, or other evidence, must warrant a finding of knowledge on the part of the governing body that the objectionable conduct has become customary practice of city employees. Where the violations are flagrant or severe, the fact finder will likely require a shorter pattern of the conduct to be satisfied that diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation. Knowledge of a continuing practice of city employees may be attributed to the governing body in one of two ways. Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.

**b. City Policy (of Policymaking Official)**

 The Supreme Court in *Monell* expressly stated that the city policy, for which the city may suffer liability, may be

---

**3.** Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy. *Berry v. McLemore,* 670 F.2d 30, 32 (5th Cir.1982) (holding that single, improper arrest is not the kind of systematic, municipally supported abuse that constitutes custom); *See Lopez v. City of Austin,* 710 F.2d 196, 198 (5th Cir.1983) (failure to promote and to grant a merit increase to individual who had filed a grievance against his employer was isolated act, not part of custom denying merit increases to those who file EEOC complaints); *Turpin v. Mailet,* 619 F.2d at 202 (failure to discipline police officer for single incident of illegality did not constitute official policy; there was no prior pattern or practice of harassment on part of police force and no violations were brought to attention of supervising board). Some courts have found custom or policy to exist where there is a single violation. In *Leite v. City of Providence,* 463 F.Supp. 585, 590 (D.R.I.1978), the court stated:

> [C]itizens do not have to endure a "pattern" of police misconduct before they can sue the

city under section 1983. If a municipality completely fails to train its police force, or trains its officers in a reckless or grossly negligent manner so that future police misconduct is almost inevitable, the municipality exhibits a "deliberate indifference" to the resulting violations of a citizen's constitutional rights. In such a case, the municipality may fairly be termed as acquiescing in and implicitly authorizing such violations.

A city may well have a policy with respect to police recruitment and training that is itself unconstitutional and injurious, but occasional acts of untrained policemen are not otherwise attributed to city policy or custom. We have characterized cases such as *Herrera v. Valentine,* 653 F.2d 1220, 1224 (8th Cir.1981), and *Owens v. Haas,* 601 F.2d 1242, 1246–47 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979), as the "most expansive" view of *Monell. Berry v. McLemore,* 670 F.2d at 33.

made by city lawmakers "or by those whose edicts or acts may fairly be said to represent official policy." We do not read the Court's words here to declare that any city official's edicts or acts would render the city liable in any case where a fact finder chose to say, speaking fairly, that the edicts or acts were official policy. The Court intended there to be a legal perimeter for city liability, which was not to include responsibility for the edicts or acts of its employees, whatever their rank, unless in accord with city policy. Liability must rest on official policy, meaning the city government's policy and not the policy of an individual official. The policy is that of the city, however, where it is made by an official under authority to do so given by the governing authority. Hence, culpable policy is attributable to the governing body of the city where the policy was made by an official to whom the governing body had given policymaking authority.

■ But policymaking authority is more than discretion, and it is far more than the final say-so, as a matter of practice, on what water main will be replaced today and whether a building meets city construction standards. City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. Policymakers act in the place of the governing body in the area of their responsibility; they are not supervised except as to the totality of their performance. The governing body retains the prerogative of the purse and final legal control by which it may limit or revoke the authority of the official. The relinquishment of policymaking and supervision by the governing body is much more likely to exist, and be necessary, as the size and complexity of the government increases.

■ The governing body may delegate policymaking authority in either of two ways. It may delegate policymaking power by an express statement, by a job description or by other formal action. Or it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role. In either case, the delegation of policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the delegee. *See Brewer v. Blackwell,* 692 F.2d 387 (5th Cir.1982) (town not liable for its police chief's conditioning release of prisoner upon execution of hold-harmless agreement, in absence of evidence that the requirement was pursuant to municipal policy or custom); *Berry v. McLemore,* 670 F.2d 30 (5th Cir.1982) (chief of police struck and shot plaintiff in course of arrest for traffic offense; town not liable because no municipal policy authorized or encouraged the use of excessive force in making arrests). The governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board.

### 5. City of Slidell Outside The Contours

■ Bennett alleges that the delays of his liquor license and occupancy permit and the termination of his electric service were the result of official city policy. The trial judge cited two grounds to support Bennett's contention: first, the city maintained a "custom or usage" of unequally applying the building code; and second, Dugas' authority to issue or deny occupancy permits was never questioned by the council members and thus represented official policy of the city. *Bennett,* 518 F.Supp. at 60. We disagree. Under the record there is no legal basis for city liability.

We may first look for the city policymaker in Slidell. Were the city attorney and building inspector given policymaking authority? If so, it would be to them we would look to see if either had promulgated an express policy or acceded to a persistent practice which led to plaintiff's injury. But neither of these city employees had any policymaking authority. The city attorney was employed only to give legal advice. The building inspector's job was to execute

or administer the city policy, established by the city council in its building code. He obtained his authority from the chief administrative officer of the city. His decisions were appealable to the board of zoning adjustments and to the city council. His decisions were perhaps discretionary and ministerial, but he had no authority to act in lieu of the council to set or modify city policy.

We then look to the city council alone as the Slidell policymaker. The council declared no policy about which complaint can be made. That leaves us with the question of whether there was a persistent practice of unequal application of the law in this city for which we can attribute responsibility to the city council.

Other than the fact that plaintiff in this case suffered some delay after an objector to the lounge threatened to exercise influence against him, there is no evidence at all in this record that a persistent practice existed in Slidell by which some builders were favored over others. Dugas, who suffered from a heart condition and testified by deposition, said that it was his opinion that shells constituted a needed foundation where there was quicksand in the soil in Slidell and that, while he was building inspector, he preferred to allow some establishments to operate with shells and without paving. However, where a complaint was made, as it was in the present case, he applied the letter of the building code and required paving or blacktopping. There is no evidence of persistent favoritism. The employee, Dugas, deviated from the established procedures and, on his own, allowed exceptions to the building code unless someone complained. If Bennett suffered unequal treatment, it may have been due to the complaint and not to a practice by Dugas that unequally treated individual builders. And even if Dugas did treat Bennett differently or, "in a number of cases around Slidell" (as he said), allowed use of shells, there was no evidence that this was a course of conduct attributable to the city council. Bennett neither alleged nor proved any unconstitutional custom known by or attributable to the governing body of

Slidell. His complaint (filed prior to *Monell* and never amended) alleged that city employees (and certain now absolved councilmen) violated his rights, for which the city was liable. Bennett may have been injured by Dugas and Berrigan; he was not injured by the City of Slidell.

The judgment against Berrigan is affirmed. Otherwise, the judgment is reversed. Costs of this appeal are to be borne by the plaintiff.

AFFIRMED in part; REVERSED in part.

GARWOOD, Circuit Judge, concurring:

I concur in Judge Reavley's opinion. I merely add that in my view this case does not present, and I do not believe we reach, the question of whether there may be instances in which it would be inappropriate to impose on the city a purely vicarious responsibility under section 1983 for the wrong *even* of a truly policy-making official acting within the scope of the authority delegated him by the city's governing body—for example, an instance of highly unusual action, of a type not reasonably foreseeable by the governing body, which it takes prompt steps to correct.

POLITZ, Circuit Judge, with whom GARZA, TATE, JOHNSON and WILLIAMS, Circuit Judges, join, dissenting:

"Difficult questions nevertheless remain for another day. There are substantial line-drawing problems in determining 'when execution of a government's policy or custom' can be said to inflict constitutional injury such that 'government as an entity is responsible under § 1983.'" *Monell v. Department of Social Services,* 436 U.S. 658, 713, 98 S.Ct. 2018, 2047, 56 L.Ed.2d 611, 649–50 (1978) (Powell, J., concurring). For us, today is one of those other days. We are keenly aware of the accuracy of Justice Powell's prediction. There are substantial line-drawing problems, indeed.

I agree with much of that written by my brother Reavley, but I cannot agree with the majority's holding that the actions of

city building inspector Dugas and city attorney Berrigan, within the context of the facts of this case, are not acts of those who "may fairly be said to represent official policy." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. By today's opinion the majority permits municipalities effectively to immunize themselves from § 1983 damage liability for the unconstitutional actions of their appointed officials merely by articulating facially constitutional policies in the substantive areas in which the officials perform their delegated duties. I cannot agree with this unduly restrictive view of *Monell.*

The issue presented in this case, as I perceive it, is whether a municipality may be held accountable in damages under § 1983 for the unequal and, thus, unconstitutional enforcement of its facially valid ordinance by an appointed official to whom the city has delegated final authority for interpretation and enforcement. I see both factual and legal questions. The jury implicitly and the trial court expressly made factual findings upon which they predicated the City of Slidell's liability. There need be no citation of authority for the statement that these factual findings are to be upheld on appeal unless shown to be clearly erroneous and without record support. I accept the facts and proceed directly to the legal issue.

*Monell* teaches that under § 1983 a municipality must respond in damages for constitutional injuries resulting from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037.

The majority opinion giveth but immediately taketh away. Although it acknowledges that official policy can be made by a city official pursuant to delegated authority, it relieves the city of § 1983 liability whenever the city's official substantive policy, as set forth in a written ordinance or as formally adopted by the city's lawmakers, is facially constitutional. In essence, the majority holds that any action by an appointed official that is inconsistent with the city's

written ordinance is an aberrant act attributable only to that official and, therefore, that such action can never constitute official city policy within the meaning of *Monell.* This restrictive interpretation of *Monell* effectively negates the possibility that municipal liability will ever be imposed for the unconstitutional actions of an appointed official. Indeed, under the contours defined by the majority, the instances in which any edict or act of any person not a "lawmaker" may "fairly be said to represent official policy" will seldom arise. That result is totally at odds with *Monell*'s mandate that municipalities be subjected to § 1983 liability for more than the mere written words of their ordinances. As Justice Frankfurter recognized in *Nashville C. & St. L.R. Co. v. Browning,* 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1940), quoted in *Monell,* 436 U.S. at 691 n. 56, 98 S.Ct. at 2036 n. 56:

> It would be a narrow conception of jurisprudence to confine the notion of "laws" to what is found written on the statute books, and to disregard the gloss which life has written upon it. Settled state practice ... can establish what is state law. The Equal Protection Clause did not write an empty formalism into the Constitution. Deeply embedded traditional ways of carrying out state policy ... are often tougher and truer law than the dead words of the written text.

I read *Monell* to extend substantially farther than the execution of a formally adopted or announced policy that is unconstitutional on its face. Indeed, it must do so if *Monell*'s prescription of municipal liability is to have any meaningful application whatsoever.

Under the majority's formulation, a city is only responsible for the unconstitutional enforcement of a facially constitutional ordinance when it is established that the aberrant conduct was so notorious that it can only be assumed that the city lawmakers tacitly approved the wrongful act. That proposition emasculates *Monell.* Corporate bodies, such as municipalities, act only through natural persons. It is through the

actions of such persons that laws are promulgated and policies are formally articulated. And it is only through the actions of such persons that official power and authority may be exercised and official policies and customs may be enforced. The rule of *Monell* must be interpreted to encompass the execution of governmental policy or custom, whether *de jure,* made by the lawmakers, or *de facto,* the acts of those clothed with the city's power and authority in a given situation. The first category poses little difficulty; one need only look to see if the city has formally ordained an unconstitutional policy. One rationally expects to find little in this search. It is the second category that is problematic, however, and it is into that foggy swampland that the present case calls us.

Bill Dugas, usually referred to as the city building inspector, was chief of the Office of Permits and Inspections. He was appointed by elected city officials and was delegated specific enforcement authority by the Zoning Ordinance of the City of Slidell.[1] Section 3.201 of that ordinance creates Dugas' position and delegates his authority:

> For the purpose of administering and enforcing this ordinance there is hereby created an Office of Permits and Inspections. The chief of this office, who shall be appointed by the president of the City Council with the approval of the Council, shall be charged with the responsibility of administering and enforcing the provisions of this ordinance.

Section 3.302 delegates to the building inspector the power to enforce the zoning ordinance through the granting or denying of occupancy permits.

> It shall be unlawful to install permanent utilities in or to use or occupy or permit the use or occupancy of any part of any building or premises hereafter erected, created, changed, converted, or wholly or partly altered or enlarged in its use or structure until a certificate of occupancy shall have been issued therefor by the administrative official stating that the

proposed use of this building or land conforms to the requirements of this ordinance.

One of the substantive provisions that Dugas was empowered to enforce relates to the surfacing of off-street parking facilities for businesses. Section 4.1 of the zoning ordinance requires that such parking lots "be surfaced with a minimum of four (4) inches of concrete or similar all-weather surface." Bennett asserts that when he first spoke to Dugas about remodeling the premises for the lounge he requested and was given permission to surface the adjacent lot with shells. Dugas denies having given this verbal authorization but concedes that he allowed several other business establishments in Slidell to surface their parking lots with shells. The cost of a layer of shells is markedly less than the cost of four inches of concrete.

I view the evidence as did the trial judge and jury. Dugas declined to authorize Bennett's use of a shell surface because of the intervention of John Coerver. Coerver, who was the City Auditor and an influential man in Slidell, lived near Bennett's lounge. He warned Bennett of his influence with city authorities and of his intention to use that influence to prevent Bennett from opening the lounge. Coerver did not speak idly. He made known to Dugas his objection to the lounge. As a direct result, Dugas refused to issue an occupancy permit until Bennett incurred the additional expense of laying four inches of concrete over the parking area. Action on Bennett's application for a liquor license was shelved because Bennett did not have an occupancy permit. In the meantime, Dugas and the city attorney "officially" acted to give the local utility company "authority to disconnect electric power" at the lounge. *See* panel opinion, 697 F.2d at 659.

Although the zoning ordinance provides for administrative review of Dugas' interpretation and enforcement of the ordinance,[2] the record reflects that Dugas' deci-

---

1. Ordinance Number 795, City of Slidell, Louisiana, effective September 15, 1968.

2. Section 3.2 of the Slidell zoning ordinance provides:

sions to grant or deny occupancy permits were never challenged. Dugas' decisions were final. His actions were the alpha and omega of the interpretation and execution of the city's official policy in this area.

The majority shields the city from § 1983 liability for Dugas' unconstitutional enforcement of the zoning ordinance on the ground that elected city officials did not authorize Dugas to make official city policy. I cannot concur in the broad sweep of that reasoning. Dugas could and did speak for the city on a matter of city policy. By formal action of the city council he was designated the primary authority to interpret and enforce the zoning ordinance. In fact, under the ordinance Dugas was the sole repository of city authority to grant or deny occupancy permits. Indeed, this delegation to Dugas was a major part of the city's zoning policy. Dugas' interpretation and enforcement of the ordinance therefore constituted the execution of official city policy. His actions were final and binding. The ordinance provided for an appeal to the Board of Adjustment and thereafter to the courts, but the anecdotal evidence reflects that no such appeal was ever taken. Dugas' unequal enforcement of § 4.1 fits perfectly within *Monell*'s prescription for § 1983 municipal liability where the "execution of a government's policy ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037.

The majority cites this court's decisions in *Schneider v. City of Atlanta,* 628 F.2d 915 (5th Cir.1980) and *Bowen v. Watkins,* 669 F.2d 979 (5th Cir.1982). I find both cases supportive of the conclusion that the City of Slidell is liable for Dugas' unconstitutional acts. For example, Judge Wisdom wrote in *Bowen:*

When an official has final authority in a matter involving the selection of goals or of means of achieving goals, his choices represent governmental policy.... If a higher official has the power to overrule a decision but as a practical matter never does so, the decisionmaker may represent the effective final authority on the question.

*Id.* at 989. *See also* Schnapper, *Civil Rights Litigation After Monell,* 79 Colum.L.Rev. 213, 218 (1979).

Notwithstanding the constitutionally neutral language of the zoning ordinance, Dugas' duties were not merely ministerial, as the majority suggests. Rather, through the exercise of his unbridled authority to enforce the zoning ordinance as he saw fit, Dugas was empowered with *de facto* final authority to select goals and to devise the means of achieving those goals. Under *Bowen,* then, Dugas' acts represented official governmental policy within the meaning of *Monell.*

An appointed city official may be the final authority with respect to a specific policy without being the ultimate authority. It is at this point that I differ most with the majority. In my view, if an official is delegated the authority to act on behalf of the city in situations requiring the exercise of discretion, and if the decisions made by that official within the scope of his authority end the matter *unless and until something else is specifically initiated* (such as a formal appeal of the official's decision), then that official is one "whose edicts or acts may fairly be said to represent official policy" within the intendment of *Monell.* City policy may result from the exercise of either *de jure* or *de facto* final authority. The mere fact that the official's acts are inconsistent with the city's facially constitutional ordinance cannot and should not be sufficient to immunize the city from § 1983 liability under *Monell.*

Finally, today's decision and the Supreme Court's decision in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63

---

It is the intent of this ordinance that all questions of interpretation and enforcement shall be first presented to the administrative official and that such questions shall be presented to the Board of Adjustment only

on appeal from the decision of the administrative official and that recourse from the decision of the Board of Adjustment shall be to the courts as provided by law.

L.Ed.2d 673 (1980) are the proverbial lion and lamb. Can they coexist? The Supreme Court held in *Owen* that a city may be held accountable under *Monell* for the unconstitutional acts of appointed officials even if the officials enjoy individual immunity from § 1983 liability. *See Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) and authorities cited therein. Under today's ruling, as long as the language of the city's written ordinance is consistent with constitutional norms, a victim of an unconstitutional application of that ordinance will have the Hobson's choice of suing either an immune city or an immune and/or judgment-proof official. I do not believe that the Forty-second Congress raised such an impenetrable shield against a victim of a constitutional injury when it adopted section one of the 1871 Civil Rights Act with the intention of throwing open the doors of the federal courts to protect federally created rights from official state encroachment.

Today's opinion sounds a muted death knell in this circuit for what I perceive to be the intended application of *Monell.* For that reason, I cannot join the majority and must respectfully dissent.