Sharon **GRANDSTAFF**, Individually and as Representative of the Estate of James C. Grandstaff; and Kay LaJune Grandstaff as Next Friend of Jo Cheryl Grandstaff, a minor, et al., Plaintiffs-Appellees, Cross-Appellants,

v.

The **CITY OF BORGER, TEXAS**, et al., Defendants-Appellants, Cross-Appellees.

Nos. 84–1241, 84–1337.

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1986.

Gibson, Ochsner & Adkins, Wayne P. Sturdivant, Amarillo, Tex., Gassaway, Gurley, Sheets & Mitchell, Jody Sheets, Borger, Tex., for City of Borger, Tex.

Haynes & Fullenweider, Clinard J. Hanby, Robert B. Wallis, Houston, Tex., for Grandstaff, et al.

Before GOLDBERG, REAVLEY and GARWOOD, Circuit Judges.

## ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

(Opinion August 5, 1985, 5th Cir.1985, 767 F.2d 161)

PER CURIAM:

The Petition for Rehearing is DENIED and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 16) the Suggestion for Rehearing En Banc is also DENIED.

Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, HILL, and JONES, Circuit Judges.

PATRICK E. HIGGINBOTHAM and EDITH HOLLAN JONES, Circuit Judges, concurring in denial of petition for rehearing:

While sympathetic with the concerns expressed by Judge Garwood in his original dissent, and repeated in the dissent from denial for rehearing en banc, we do not seek a rehearing en banc in this case. We do not read the panel opinion as opening new vistas of governmental liability. Rather, we see the opinion as responsive to a unique fact situation. We are also persuaded that reconsideration of this case en banc will generate more confusion and uncertainty than has the panel opinion.

ROBERT MADDEN HILL, Circuit Judge, with whom CLARK, Chief Judge, GEE, GARWOOD, and W. EUGENE DAVIS, Circuit Judges, join dissenting:

I write the following in dissent of the decision to deny rehearing en banc in this case.

My displeasure in the opinion of the majority in this case lies in only one aspect thereof: the holding that the City of Borger is liable to the plaintiffs under 42 U.S.C. § 1983. The majority opinion in this case by holding that the City of Borger is liable to the plaintiffs because of a city policy derived from (1) the conduct of the police officers during the incident giving rise to this case and (2) the conduct of city officials in failing to reprimand, discharge and admit errors of its police force has deviated egregiously from the Supreme Court's and our circuit's holdings as to the requirements for a municipality's liability under § 1983.

In this circuit the basis for establishing municipal liability under § 1983 has been clearly articulated in two significant en banc decisions. In *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir.1984) (en banc), we recognized in accordance with the teachings of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that a city may violate a person's civil rights through a formally declared policy, i.e., by direct orders or promulgations, or through an informal acceptance of a course of action or conduct by its employees, i.e., custom or usage. In *Bennett* "custom or usage" was defined as "persistent and widespread ... practices," a "systematic maladministration" of the laws, practices that are "permanent and well settled," and "deeply embedded traditional ways of carrying out ... policy." 728 F.2d at 768 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 173–74, 90 S.Ct. 1598, 1617, 26 L.Ed.2d 142 (1970)). The *Bennett* court emphasized that before liability of a municipality under § 1983 can exist for a course of action or conduct by city employees there must be a certain causal relationship between the offending action or conduct and a city policy maker:

> In the context of the question of city liability for such persistent conduct of its employees, i.e., conduct that has become a *traditional* way of carrying out policy and has acquired the force of law, the *persistent* conduct must be attributable to the source of policy or law of the city, its governing body.

728 F.2d at 768 (emphasis added) (footnote omitted). The court went on to further point out that "isolated violations are not the persistent, often repeated, constant violations that constitute custom or policy." 728 F.2d at 768 n. 3.

A short time later, in *Webster v. City of Houston*, 735 F.2d 838 (5th Cir.1984) (en banc) (per curiam), we again addressed the issue of a city's liability under § 1983 based on the enunciated policy or on a policy founded on custom. The *Webster* court stated:

> A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy.

> Official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A *persistent, widespread practice* of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is *so common and well settled as to constitute a custom that fairly represents municipal policy.* Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

735 F.2d at 841 (emphasis added).

Our holdings in *Bennett* and *Webster* that proof of prior incidents of misconduct was an essential element to the establishment of the liability of a city through a policy based on custom were foreshadowed by our earlier holding in *Languirand v. Hayden,* 717 F.2d 220 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984). In *Languirand* we discussed the proof required to hold a city liable under § 1983 when the basis for doing so is the failure to train its police force. We stated:

We conclude that if there is a cause of action under section 1983 for failure to properly train a police officer whose negligent or grossly negligent performance of duty has injured a citizen, that such failure to train must constitute gross negligence amounting to conscious indifference, and that a municipality is not liable under section 1983 for the negligence or gross negligence of its subordinate officials, including its chief of police, in failing to train the particular officer in question, *in the absence of evidence at least of a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or*

*that serious incompetence or misbehavior was general or widespread throughout the police force.*

717 F.2d at 227–28 (emphasis added).

The requirement of our holdings calling for proof of more than merely a single incident of misconduct before municipal liability can be established under a custom theory was recently addressed by the Supreme Court in *City of Oklahoma v. Tuttle,* —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). The plurality of the Court in discussing the proof necessary to establish a city's liability under a setting of inadequate police training stated:

But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

—— U.S. at ——, 105 S.Ct. at 2436, 85 L.Ed.2d at 804 (footnotes omitted).[1] In summary, the foregoing precedents establish two ways in which the plaintiffs in *Grandstaff* could have established liability against the City of Borger under § 1983.

The first way the liability of the city could have been established would have been proof that the city had adopted an unconstitutional policy, that is, a policy inherently designed to deprive citizens of their rights which resulted in Grandstaff's death. Had this been the situation, then by establishing that the city formally adopted an unconstitutional policy (such as the use of excessive force by its police in performing their duties), a *single incident* performed in furtherance of the policy that gives rise to a complained of injury would suffice to make the city liable under § 1983. This theory was not at issue in this case.

---

1. The plurality also indicated that it was not expressing an opinion whether "inadequate training" would meet the policy requirements of *Monell,* and, if so, whether a more conscious decision by a responsible official than mere

"gross negligence" in the establishment of police training practice would suffice to prove a policy that was the "moving force" behind subsequent unconstitutional conduct. —— U.S. at——, n. 7, 105 S.Ct. at 2436, n. 7, 85 L.Ed.2d at 804 n. 7.

The second way the liability of the city could have been established would have been proof that policy-making officials of the city adopted a policy, not in and of itself unconstitutional (such as inadequate training of its police force), but the implementation of which amounted to gross negligence, that is, a conscious indifference to the rights, welfare and safety of citizens affected by the policy. Under this theory, in order to establish that the policy in question was the "moving force" behind the conduct charged to be unconstitutional, proof would be required that the offending city employee acted in the belief that his conduct met the expectations of city policy-makers. Such proof necessarily requires evidence of a custom, that is, proof of similar incidences of official wrongdoing or general or widespread incompetence of or reckless misbehavior by city personnel and that the city employee acted accordingly. It is this theory on which the majority of the panel relies to hold the city liable.

The record in this case is devoid of prior incidents of misconduct by police similar to those which occurred on the evening that Grandstaff met his death. The record is also devoid of any evidence prior to the incident in question demonstrating incompetence or reckless misbehavior by members of the police force. The majority, however, makes up for this deficiency in the record. To support its conclusion that an unconstitutional policy was in existence at the time of Grandstaff's death, the majority relies on the jury's findings that the city was "grossly negligent in failing to properly train its police officers," that "serious incompetence or misbehavior was widespread throughout the City of Borger police force," [2] and that the city's consciously indifferent training of its officers was a "proximate cause" of Grandstaff's death. The majority's analysis of these findings is that the police chief of Borger "chose to operate a police force where prevalent recklessness endangered human life and safety, and that this policy choice caused Grandstaff's death." 767 F.2d at 171.

In reaching this holding, the majority, like the jury, was unable to rely on evidence of a prior pattern of similar misconduct of the police force resulting in injury to citizens or on evidence of serious incompetence or misbehavior throughout the police force. In order to make up for this deficiency in the evidence, the majority resorted to what it describes as the repeated acts of abuse of the police officers on the evening in question and also the failure of city officials to take disciplinary action against the offending officers after the incident.[3]

In light of our holdings in *Languirand, Bennett,* and *Webster,* and the Supreme Court's recent decision in *Tuttle,* the facts of this case do not give rise to liability on the part of the city. No fanciful structuring of the conduct of these officers on the evening in question can suffice as evidence of conduct that is "permitted and well settled," "persistent and widespread," a "systematic maladministration" or "deeply embedded traditional ways"—the type of conduct required under the case law to prove a "policy." The "isolated" event, i.e., the incident in question, on which this case is founded is simply not enough. The following language from *Webster* bears out the requirement of a persistency of conduct before a policy can be found:

> If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions *must* have occurred for *so long or so frequent-*

---

2. "Gross negligence" was defined in the court's charge as "more than momentary thoughtlessness, inadvertence or error of judgment. It means ... conscious indifference to the rights of [others]."

3. The majority also opted for a definition which permits a finding of a policy when the evidence supports merely a "disposition" to effect a cause of action by a policy maker. This is a less stringent definition than that referred to by the Supreme Court in *Tuttle:* "One well-known dictionary, for example, defines 'policy' as a 'definite course or method of action selected from among alternates and in light of given conditions to guide and determine present and future decisions.' Webster's Ninth Collegiate Dictionary 910 (1983)." —— U.S. at —— n. 6, 105 S.Ct. at 2436, n. 6, 85 L.Ed.2d at 804 n. 6.

*ly* that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the *expected, accepted practice of city employees.*

735 F.2d at 842 (emphasis added). If the questioned conduct of a city employee alone be deemed sufficient to infer a policy, then our previous requirements in this area are negated.

Nor is it any aid to the majority's holding that the city failed to later discipline the officers for their conduct on this occasion. The post-event failure to discipline the officers (call it as the majority does callous in nature if one must) cannot supply the necessary linkage to establish a city policy. An after-the-fact failure to discipline illegal conduct is by itself no evidence of a before-the-fact policy of illegal conduct. It might be evidence of a policy commencing from that point in time when no discipline was invoked, but certainly not before. We so held in *Berry v. McLemore*, 670 F.2d 30 (5th Cir.1982), where a police chief committed an aggravated assault on a person he was attempting to issue a traffic citation. We stated that a municipal policy of authorizing policy misconduct "cannot be inferred from a municipality's isolated decision not to discipline a single officer for a single incident of illegality." 670 F.2d at 33 (citing *Landigran v. City of Warwick*, 628 F.2d 736 (1st Cir.1980), and *Turpin v. Mailet*, 619 F.2d 196 (2nd Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980)).[4]

The majority has also failed to cite any precedent for the proposition that proof of post-event conduct in a § 1983 case is sufficient to uphold a jury finding of a pre-event policy. The cases relied upon in the opinion are non-§ 1983 cases, and show only that motive in a Title VII action may be shown by subsequent conduct, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93

S.Ct. 1817, 36 L.Ed.2d 668 (1973), and that a criminal conspiracy may be proven by subsequent acts, *Anderson v. United States*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974).

The "moving force" causation requirement has not been met here because the police officers were not shown to be *aware* of any city policy within which their conduct was patterned, there being no policy deducible by the officers through the conduct of city officials in either approving or condoning past similar conduct. If a policy did not have its genesis before the officers acted, then their awareness of policy also could not be inferred by the city's post-event failure to take remedial steps to prevent future conduct in a similar vein.

Since plaintiffs failed to establish the City of Borger's liability under § 1983, I accordingly dissent from the denial of the petition for rehearing en banc.

---

4. In *Berry* the court found no inference of a city policy was possible when an independent investigation of the questioned event had taken place and the city followed the recommendation of the investigator in not invoking discipline against the chief of police. In *Grandstaff* there

is also a suggestion in the evidence that the Texas Rangers were called on to make an investigation of the conduct of the officers on the occasion in question, but there is no indication of what these recommendations might have been.