**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 26, 2009

Charles R. Fulbruge III
Clerk

No. 08-60944

WILLIE MCGREGORY, SR.; LUCY MCGREGORY

Plaintiffs-Appellants

v.

THE CITY OF JACKSON, MISSISSIPPI; MAYOR FRANK MELTON, IN
HIS OFFICIAL CAPACITY AS MAYOR OF THE CITY OF JACKSON;
JACKSON CITY COUNCIL; JOHN DOES A-Z

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
3:06-CV-00561

Before WIENER, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

This 42 U.S.C. § 1983 claim against the City of Jackson ("the City"), its mayor and City Council, and John Doe police officers arises out of events that took place during a standoff at a tire shop owned by Willie McGregory Sr. ("McGregory") (Appellant) between his son, Willie McGregory Jr. ("McGregory Jr.") and the Jackson City police. McGregory's allegations, if true, are disturbing.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

But McGregory has brought his claims of municipal liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978). He has failed to identify a policymaker who can be charged with actual or constructive knowledge of the custom or policy that he alleges led to the constitutional violation in this case as the law governing municipal liability requires. We therefore AFFIRM the grant of summary judgment to the City.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 18, 2005, McGregory Jr. was pulled over for outstanding warrants. He fled the scene and was pursued by police to his father's tire shop, where a standoff between McGregory Jr. and a large group of Jackson police officers ensued. McGregory pleaded with his son to surrender and was overheard by at least one police officer doing so. Eventually McGregory Jr. was shot by the police in the leg and then surrendered. McGregory came out of the tire shop behind his son and was ordered to lay down on the ground. He complied by laying down on his stomach. While he was on the ground an unidentified officer told him to place his hands behind his back and handcuffed him. An unidentified officer (potentially the same officer) then put a gun to McGregory's head and ordered him to roll over. McGregory, who is over 60, advised the officer that he was physically unable to do so and that the handcuffs were too tight. The officer told him that if he did not turn over he would "blow his fucking brains out." McGregory was still unable to turn over, however, and an officer (again, potentially the same officer) kicked him in the side, breaking one of his ribs. McGregory testified that he did not know if it was one, two, or three officers involved in his arrest because he did not see the officer(s) and all of the officers present on the scene denied, in their depositions, having any idea who arrested or assaulted McGregory.

McGregory was put in a police car and taken to the station, where he was questioned. Although McGregory's handcuffs were capable of being double-locked to prevent unintentional (or intentional) tightening, it appears that the police failed to engage this feature. He complained during the ride that the handcuffs were too tight but he was ignored. At some point at the station, after he complained again, his handcuffs were removed. Because his left wrist was swollen, the police officer assigned to drive him back to his shop and release him was told not to handcuff him for the ride, but did so anyway. Upon returning to the repair shop McGregory told Detective James Roberts ("Detective Roberts") that he had been kicked in the side while handcuffed. McGregory declined an ambulance; his wife arrived and took him to the hospital, where he was diagnosed with a broken rib and an abrasion on his side where he said he had been kicked. The rib injury required eight weeks of rest. McGregory testified that he was permanently injured in the incident – specifically that he lost sensation in his left hand (his dominant hand) and could no longer grip tightly with it.

A report filed by Detective Roberts on the standoff reflects McGregory's complaint of having been kicked. However no investigation was done and no action was taken until McGregory and his wife filed suit on October 6, 2006, against several named officers, the City of Jackson, the mayor of Jackson in his official capacity, the Jackson City Council, and John Does A-Z (representing the police officers present during the arrest).[1] The lawsuit sought to recover damages for false arrest and excessive use of force under 42 U.S.C. § 1983 and for wrongful arrest, false imprisonment, assault and battery, malicious prosecution,

---

[1] After the lawsuit was filed, the City's Legal Department directed an internal affairs officer, Sandra Stasher, to investigate the incident.

and abuse of process under state law.[2] In the course of the lawsuit, McGregory deposed more than 23 officers, including every officer present at the scene, none of whom admitted to knowing who had arrested McGregory and caused his injuries. McGregory eventually agreed to dismiss the John Doe officers without prejudice because he could not identify who was responsible for his injuries. The district court then granted summary judgment to the remaining defendants on all claims on the grounds that McGregory had not raised a genuine issue of material fact as to whether a custom or policy existed that led to his injuries and had not raised a genuine issue of material fact as to whether a policymaker knew or should have known about said custom or policy even if it existed. McGregory timely appealed.

## II. STANDARD OF REVIEW

This court reviews a grant of summary judgment *de novo*. *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). All doubts must be resolved in favor of the nonmoving party. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. Unit B Sept. 1981).

## III. ANALYSIS

On appeal McGregory contends that the City is liable for wrongful arrest and excessive force under 42 U.S.C. § 1983. It is well-established that there is

---

[2] Mrs. McGregory's claim rises and falls with her husband's, so we do not address it separately here. McGregory did not brief the state law claims on appeal, and they are thus waived.

no *respondeat superior* liability under § 1983 for constitutional violations. *Monell*, 436 U.S. at 694. Instead, a municipality can be held liable under § 1983 only if the plaintiff can establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera v. Houston Indep. Sch. Dist*, 349 F.3d 244, 247-249 (5th Cir. 2003). In this circuit, a "policy or custom" is either of the following:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam). Where a custom has been established, knowledge must be attributable to a policymaker. *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (en banc).[3] Actual knowledge on the part of the policymaker must be shown directly, but "[c]onstructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities." *Id*. However, "[i]solated violations are not the persistent, often repeated, constant violations that constitute custom and policy." *Id*. at 768 n.3.

---

[3] An en banc decision was issued in *Bennett* on April 2, 1984. *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984) (en banc) (en banc). On July 9, 1984, an en banc per curiam order was issued denying a petition for rehearing and clarifying the definition of policy and custom as given above. *Bennett v. City of Slidell*, 735 F.2d 861 (5th Cir. 1984) (en banc). Future cites to *Bennett* in this opinion refer to the primary en banc opinion, not the *per curiam* denial of the petition for rehearing.

McGregory's primary claim seems to be that he was subject to an unconstitutional use of excessive force by whichever officer(s) kicked him in the ribs and handcuffed him, and that such force was used because the police department had a custom of ignoring reports of excessive force, failing to investigate reports of excessive force, and protecting its own members through a code of silence, thus allowing or encouraging police officers to use excessive force without fear of repercussions. We need not reach the question of whether McGregory has produced enough evidence to raise a genuine issue of material fact as to whether a custom of a code of silence existed in the Jackson City Police Department based upon this one incident. Although McGregory's allegations, if true, should be of great concern to the Jackson City Police Department, the law requires that, even assuming he can show a custom, McGregory identify a policymaker who can be charged with actual or constructive knowledge of the code of silence that he has identified as the alleged custom. *Bennett*, 728 F.2d at 768-69. McGregory did not identify a policymaker in the proceedings below. Despite mention of this failure in the district court's opinion, McGregory still did not identify a policymaker in his initial brief to this court, nor did he identify one in his reply brief even after this omission was again pointed out by the City in its response. At oral argument, for the first time, McGregory finally identified the City Council as the policymaker and argued that the policymaker's knowledge could be inferred from the acquiescence of the City Council in the alleged cover-up in this case.

Arguments not made below are generally waived and cannot be raised for the first time on appeal. *See, e.g., LeMaire v. La. Dep't of Trans. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). Even were we to consider the identification of the City Council as the required policymaker, McGregory has presented no evidence that raises a genuine issue of material fact as to whether the City Council, or any of its members, was aware of the alleged code of silence or should have been aware

6

of it or of the events in this case. He did not depose a single member of the City Council, the Chief of Police, or anyone else who could qualify as a policymaker. Simply mentioning the City Council in oral argument is not sufficient to raise a genuine issue of material fact that the City Council can be charged with actual or constructive knowledge of supporting or giving rise to a code of silence among the Jackson City Police Department that was the moving force behind McGregory's injuries.[4]

McGregory also claims that the City is liable for wrongful arrest. He contends that the police knew generally that he was trying to convince his son to surrender and that there was therefore no reason to take him into custody. McGregory does not clarify what custom he believes gave rise to his arrest, nor does he identify a policymaker who can be charged with actual or constructive knowledge of any alleged custom leading to his arrest, apart from the aforementioned code of silence. This claim must therefore fail as well.

The facts in this case are deeply troubling, and we do not address whether McGregory has a case against the officers (in their individual capacities) responsible for arresting him, for cuffing him too tightly, or for transporting him in handcuffs after his wrist injuries were already known. We hold only that without providing any evidence as to whether the City Council knew or should

---

[4] McGregory also appears to imply that a previous case alleging police brutality against the Jackson City Police Department satisfies the requirement for constructive knowledge. *See City of Jackson v. Powell*, 917 So.2d 59 (Miss. 2005). To the extent that McGregory's argument rests on the idea that the City Council should have known about generally bad police behavior (which is not the same thing as a custom of a code of silence) because of a previous lawsuit against police department officers for brutality, *id.*, we note that the Mississippi Supreme Court declined to exercise jurisdiction over the § 1983 claim in that case because of faulty pleading, but specifically noted that if it had entertained the claim it would not have found the City liable because "there was not a scintilla of evidence presented to indicate that the city had either an on-the-books or off-the-books policy which encouraged the type of activity that the officers engaged in." *Id*. More importantly, the custom alleged in this case is not police brutality but a code of silence. *Powell* did not involve any allegations of a code of silence and thus does not establish that the City Council or any other policymaker can be charged with constructive or actual knowledge of this alleged custom.

have known about the alleged code of silence or the events in this case, McGregory cannot survive summary judgment on the question of municipal liability for the alleged constitutional violations that led to his injuries. The grant of summary judgment is AFFIRMED.