## GLOVER v. SOUTHERN CITIES DISTRIBUTING CO.
### No. 4294.

Court of Appeal of Louisiana. Second Circuit, Second Division.

June 11, 1932.

W. M. Phillips, of Shreveport, for Southern Cities Distributing Co.

Dickson & Denny, of Shreveport, for Mrs. John W. Glover.

STEPHENS, J.

During the months of October, November, and December, 1930, the plaintiff and her family resided at 850 East College street, in the city of Shreveport, La. She used gas furnished by the defendant at that address, but, as the defendant's meter was listed, when she moved there, in the name of Archie Taylor, the owner of the premises, she paid her gas bills for the months of October and November in his name. On or about January 9, 1931, she and her family moved to 840 Margaret place in the same city. The gas bill for the month of December had not been rendered when she left 850 East College street, and therefore she could not have paid it if she had desired to do so. She applied for and obtained a meter from the defendant in her own name for the purpose of purchasing gas at her new address. She paid her gas bills promptly at 840 Margaret place, and was due the defendant nothing on the account at said place on March 14, 1931, when, without notice or warning of any kind, or without demand for payment of the bill for gas used and unpaid at 850 East College street, the defendant company, at about 11 o'clock a. m. on that date, cut off her gas.

March 14, 1931, was Saturday, and Mrs. Glover was absent from her home. Mrs. John R. Stephens, Mrs. Glover's sister, was taking care of the household and Mrs. Glover's children during her absence. At 11 o'clock, when the fire faded from the grates and the kitchen stove in an unaccountable manner, Mrs. Stephens and Mrs. Glover's children had the house full of guests (some six or seven), awaiting the preparation of an unusually fine dinner, then about half done. Mrs. Stephens did not know why the fires went out, nor what to do. The house became cold, and Mrs. Glover's children, four young girls, whose ages were 11, 12, 14, and 15, were greatly embarrassed, and so were their guests, which added to their humiliation. Mrs. Stephens finally abandoned the cold home and the partially cooked dinner, and took the children and guests to a downtown restaurant.

After the dinner at the restaurant, the guests were requested to leave, and the children returned to a comfortless, unheated home, where they remained, getting their meals as best they could and sleeping at night in their clothes for added warmth, until Mrs. Glover returned on Monday morning, the 16th. Upon her return, Mrs. Glover telephoned the defendant company and told it of the situation and demanded an explanation. The company assured her that the gas was cut off by mistake, and restored the service.

Mrs. Glover brought this suit, in her individual capacity, and as tutrix for her four minor children, against the defendant com-

pany, which is a public service corporation, engaged in the sale and distribution of natural gas, to recover $50 actually expended for meals, $1,500 for humiliation and suffering of her children, and $1,000 for humiliation and suffering endured by herself, because of the wrongful and unlawful discontinuance of her gas supply.

The defendant's position, as set forth in its answer, is that the gas was cut off because plaintiff had not paid her gas bill at 850 East College street, and because she falsely represented to the company that she owed it nothing when she secured the installation of a meter and gas service at 840 Margaret place; but that it was in error in cutting off the gas, and that due apology had been extended the plaintiff therefor.

The defendant prayed that plaintiff's demands be rejected and in reconvention for judgment against the plaintiff for $7.60, the amount of the gas bill unpaid at 850 East College street.

A trial of the case resulted in a judgment in favor of plaintiff for the use and benefit of her minor children, in the sum of $500, and in favor of the defendant in reconvention for the sum of $7.60. Both plaintiff and defendant appealed.

After the trial of the case and before judgment, the defendant filed a plea of estoppel, in which it set up that the plaintiff is estopped to claim damages of the defendant on account of its wrongful act, for the reason that plaintiff and her guests were under legal duty to complain of the improper action of defendant's agent in order to give them an opportunity to correct the error made; and that plaintiff or her agents, by their silence, in this respect, acquiesced in the wrongful act of defendant; and that said silence on the part of plaintiff and her agents when under the duty to speak was a concealment of material facts unknown to defendant's employees, and in effect a misrepresentation to them upon which they had a right to rely, and so relying thereon changed their own and defendant's position for the worse.

██ It is assumed, as a basis upon which to rest the plea of estoppel, that the admitted wrong of the defendant company was an innocent error in which any corporation operating on a large scale is likely to fall; as innocent, for instance, as the error would have been if an employee of the company had been directed to cut the gas off at 841 Margaret place, and through carelessness had cut it off at 840 Margaret place. The facts in this case furnish no grounds for such an assumption. The service was not discontinued through error, as the company contends, but resulted from the deliberate intent of the company for the purpose of collecting a bill; and the manner in which the admittedly wrongful act was accomplished is slightly suggestive of malice against the plaintiff. It is reasonable to assume that, if the sole purpose which actuated the agent of the defendant was to collect the bill, he would have first demanded payment, and then followed the demand with notice of intention to discontinue the service. It seems that, as a concomitant motive, the defendant's agent desired to punish the plaintiff because, in his conception of the matter, she had committed a wrong against the company as set forth in paragraph XXIV of the defendant's answer, to wit: "That on March 14, 1931, one of respondent's agents caused said gas to be cut off because plaintiff had not paid her bill at 850 East College Street, and because she had falsely represented to the company that she owed it nothing when she secured installation of gas service at 840 Margaret Place."

Conclusive evidence that the discontinuance of the service was not done through error, but was deliberate, is shown by the testimony of Mr. Adams, the defendant's credit manager, who ordered the gas cut off. On cross-examination, Mr. Adams admitted that about a week after the occurrence he stated to the attorney for the plaintiff that he was "going to have to cut her off again if that bill was not paid."

In support of its plea of estoppel, the defendant cites Swain v. Louisiana Light & Power Co., 13 La. App. 515, 128 So. 538, which case was decided by this court. The defendant states that the essential facts in the cited case are very similar to those of this case.

In the cited case the act complained of was held by the court to have been the result of a mistake. That being true, the ruling is not applicable here.

██ Estoppel is an equitable remedy. There is no duty imposed by the principles of estoppel on A to notify B that B has done him, A, a deliberate, intentional wrong. The plea of estoppel was correctly overruled.

As the defendant admits the act complained of was unlawful, and the plea of estoppel can avail it nothing, our sole remaining duty in the case is to determine the extent of the injury suffered by the plaintiff, for which the defendant is liable.

The weather during the period that the gas service of the plaintiff was discontinued was cool, but we do not think that any actual suffering occurred because of that fact, though certainly the plaintiff's children must have been very uncomfortable in an unheated house. The trial court, we are advised, allowed no recovery for suffering because of the lowered temperature in the house, but based its judgment on the finding that the children suffered from embarrassment and humiliation because of the presence of invited guests at the time the gas service was discontinued, and the necessity for the departure of those guests under the circumstances.

■ The trial judge's appreciation of the injury in the case and the amount that should be allowed to compensate it, is in keeping with our own. We have no doubt that plaintiff's children suffered intensely from the disconcerting, humiliating, and embarrassing situation, provoked without right or warning by the defendant. Five hundred dollars is a reasonable but conservative estimate of the damages.

■ The plaintiff in her individual capacity, we think, suffered no appreciable injury, and the claim for expense for food was not proven with sufficient definiteness to serve as a basis for judgment. The demand in reconvention was properly allowed.

For the reasons assigned, the judgment appealed from is affirmed.