MARVIN, Judge.
Plaintiffs appeal a judgment rejecting their demand for damages arising out of Arkla’s termination of gas service to a house owned and used occasionally by the plaintiffs after they moved out of the house. We reverse and render judgment for plaintiffs.
FACTS
Mr. and Mrs. Gaither own a residence at 130 Mayfair Drive in Shreveport where they had lived since 1977 or 1978. About February 28, 1983, they put their residence up for sale and moved to a trailer park. They sometimes thereafter returned to the Mayfair address to use the washer and dryer which they left in the house.
Mrs. Gaither allowed her sister and brother-in-law, the Solanics, to move into the Mayfair home in mid-April 1983. The Solanics moved from another address where they had incurred a bill for gas owed to Arkla that was delinquent. The Solanics gave Arkla the Mayfair address as their forwarding address.
Arkla employees considered the Solanics to be their “customer” and the sole occupants of the Mayfair residence because So-lanie’s brother, an Arkla employee so informed them, and because the manager of the trailer park and Arkla’s records indicated that the Gaithers lived and enjoyed utility service at the trailer park.
On April 21, 1983, Arkla turned off the gas at the Mayfair residence. Mrs. Gaither, who had made a deposit for gas service in 1977 to the Mayfair house, protested and sought to have Arkla resume service. The Solanics moved out of the house about August 1, 1983, and Arkla resumed service to, the house when the Gaithers moved back in about September 1, 1983. At all times, gas used in the Mayfair house was billed to Mrs. Gaither and her account with Arkla was current. When Mrs. Gaither protested and sought resumption of gas service she answered Arkla’s inquiry and declined to become responsible for the delinquent account of the Solanics.
As authority for terminating service, Arkla relied upon rules and regulations which it had adopted to apply to its gas service in Louisiana. These rules were approved by the Louisiana Public Service Commission. We shall consider the rules that are pertinent to this action.
All customers are required to execute a service agreement or contract. Arkla will not accept orders to discontinue service from a person other than from the person in whose name the account is billed. Rule 1.
Arkla may refuse service or discontinue service to a customer at a location until that customer satisfies his delinquent bill at another location. Rule 3. Arkla has the “right” to shut off the gas at any time for reasons which include nonpayment of bills when due, after required notice has been given. Rule 4(a). Arkla may discontinue service for nonpayment of bills after five *74 days written notice left with the customer, left at the premises or posted to the customer’s address. Rule 4(b), (d).
Customers may be required to make a cash deposit to guarantee payment of their gas bill. Arkla may require an increased deposit upon written notice. The service of any customer who fails to make such a deposit may be disconnected upon five days’ written notice. Rule 5.
Gas will be charged for from the time of turn-on until Arkla discontinues service. Failure of the customer to properly notify Arkla when his or her obligation at a premises should cease shall not relieve the customer from paying for gas used at the premises. Rule 6.
The customer shall use the gas supplied for his purposes only and shall not resell or share with others any gas. Rule 8.
Under these rules, it is clear that Mrs. Gaither, who made the deposit in 1977 with Arkla for gas service at the Mayfair address, was the customer of Arkla who was obligated to pay for gas at that address until such time as she “properly notified” Arkla that her obligation should cease. The Solanics were not the “customer” of Arkla at the Mayfair residence, although they may have consumed most of the gas at that residence. Mrs. Gaither was not obligated to Arkla for the delinquent bill owed to Arkla by the Solanics for service at another location. We additionally note the absence in this record of evidence that any notice was given or posted to Mrs. Gaither before the gas was cut off.
The trial court rejected plaintiffs’ demands, finding that Arkla had reasonable cause to terminate the service and that Mrs. Gaither did not state, in the telephone call to Arkla, that she would be responsible for service to the Mayfair residence and did not state her intention of moving back into the Mayfair residence. This telephone call, however, was made after the service had been terminated and while Mrs. Gaither remained to be obligated for the service at the Mayfair house until such time as she affirmatively notified Arkla to the contrary. Mrs. Gaither did not notify Arkla at any time that her obligation for gas at the Mayfair house should cease.
We cannot agree that Rule 8 was violated by the Gaithers by their allowing the Solanics to stay in the Mayfair house and use the utility services. It is not contradicted that the Gaithers were making some use of the gas, washing and drying clothes, even though most of the gas, we deduce, was being used by the Solanics. Arkla permits a landlord to be the customer and to be billed for gas used by his tenant. Rule 8 prohibiting the resale or sharing of gas was obviously designed to prevent a customer from trading in gas at a price higher than that charged by Arkla, a regulated public utility, and was not designed to prevent guests or tenants in a customer’s premises from using the gas supplied and billed to that customer. We also note that Mrs. Gaither was always current with Arkla and timely paid her bills.
Under the circumstances described, we must conclude that the trial court was in error in rejecting plaintiffs’ demands for damages.[1] Accordingly, we shall reverse *75 the judgment and assess damages against Arkla.
QUANTUM
Plaintiffs contend that they were “embarrassed and harrassed” by the actions of defendants and are entitled to $10,-000 in damages.
Arkla contends that plaintiffs’ suit is “ex contractu” and that nonpecuniary damages such as embarrassment or humiliation are not recoverable under CC Art. 1998. This article now reads:
Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
Comment (a) to Art. 1998 explains that nonpecuniary damages are recoverable when a contract is “made for the gratification of a nonpecuniary interest and, because of circumstances surrounding its formation or breach, the obligor knew or should have known that his failure to perform would cause nonpecuniary loss.” Comment (b) defines nonpecuniary loss as “damage of a moral nature which does not affect a ‘material’ or tangible part of a person’s patrimony.”
We need not determine whether the plaintiffs have a remedy under contract and shall assess damages under CC Art. 2315. Arkla was at fault inasmuch as it violated its own rules and caused damage to the plaintiffs by terminating gas service to its customer who was not delinquent and who was not notified.
Plaintiffs’ testimony shows that any embarrassment they suffered was due in most part to their own publication of the fact that Arkla discontinued service. The testimony, however, indicates that Mr. Gaither, and Mrs. Gaither in particular, were inconvenienced by Arkla’s wrongful termination because they had to disconnect, move, and reconnect, the clothes washer and dryer on two occasions, from the house and then from the trailer park. The gas was off for about four months before plaintiffs moved back into their Mayfair Drive home.
In light of these facts we consider that $750 would justly compensate both plaintiffs. Compare Glover v. Southern Cities Distributing Co., 142 So. 289 (La.App.2d Cir.1932), where the plaintiff was awarded $500 for embarrassment caused when the gas company wrongfully and without notice turned off the gas on a cold day while plaintiff’s children had guests in the house. Plaintiffs do not seek to separate their damages and we shall not do so.
DECREE
The judgment appealed is REVERSED and judgment is hereby rendered in favor of plaintiffs, Mr. and Mrs. Albert Woody Gaither, and against Arkansas Louisiana Gas Co. (Arkla), for $750 with legal interest from judicial demand, and for all costs of these proceedings.
REVERSED AND RENDERED.

. Compare:
Glover v. Southern Cities Distributing Co., 142 So. 289 (La.App.2d Cir.1932). Plaintiffs failure to pay final bill at first address could not provide justification of cutting off gas at 2d address without notice.
Coult v. Mayor and Board of Aldermen, City of Gretna, 11 So.2d 424 (Orl.1943), writ denied; La Nasa v. Sewerage & Water Board of New Orleans, 184 So.2d 622 (La.App. 4th Cir.1966), writ refused. Sullivan v. Natural Gas Co., 154 So. 387 (La.App.2d Cir.1934).
See Annotations:
Right of public utility to deny service at one address because of failure to pay for past service rendered at another. 73 ALR 3d 1292. Liability of premises or owner or occupant for electricity, gas or water charges irrespective of who is the user. 19 ALR 3d 1227. Right to cut off supply of electricity or gas because of nonpayment of service bill or charges. 112 ALR 237.
Right of public utility to discontinue or refuse service at one address because of refusal to pay for past service rendered at another. 95 ALR 556.